IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

CHRISTOPHER REED, REGINALD HOLDEN and   |
COREY MCCLENDON, on behalf of themselves|
and a class of similarly situated   |
persons,   |
  |
    Petitioners,   |   CLASS ACTION
  |
v.   |   CASE NO.
  |   5:19-CV-00385
GARY LONG, in his official capacity and  |   -MTT
individually, JEANETTE RILEY,   |
individually and SCOTT CRUMLEY,   |   JURY TRIAL
individually.   |   REQUESTED
  |
    Respondents.   |

---

**BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**I.   FACTS**

During the Halloween season in 2018, the Butts County Sheriff's Department ("BCSD") instituted a policy of placing signs in front of the homes of every registered sex offender in the County stating: "Warning: No Trick-or-Treating … A Community Safety Message … Sheriff Gary Long." A flyer, approved by Long, warned residents of these homes that tampering with the signs was a criminal offense. [T. 24, 32, 52, Ex. P1; Holden Dep. 23; McClendon Dep. 15; Reed Dep. 19; Crumley Dep. 20]. Long posted a message on Facebook[1] to

---

[1] Long used Facebook, which is only available on the internet, to clarify the signs' purpose because it was, "an effective way of

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

clarify[2] that the signs indicated that a registrant lived in the home where it was placed.[3] [T. 21; 38-39; 43-44; 57; Ex.s D1 & P3]. Registrants and their families had no right to deny the BCSD access to their property to place the signs. [T. 47; 55]. Nor could they remove, contradict or obscure the signs on pain of arrest. [Doc. 40 ¶35; T. 15, 24, 32, 46-47; Holden Dep. 15; Crumley Dep. 16-17].

Long instituted the policy because of the cancellation of "Halloween on the Square in Jackson," an event where Long estimated that, "two and three thousand children … would come through the square." [T. 38-39; Crumley Dep. 27-28]. The intention of the policy was, "to alert the public as to where registered sex offenders live" and "to associate these signs with the registrants who lived on the properties." [T. 46, 58, 84]. Pursuant to Georgia law, Butts County's sex offender registry is published not only on the internet, but at several county buildings. [T. 60-61]. Nothing in the Georgia Code

---

quickly and widely spreading information which [he] wish[ed] members of the community to have." [T. 57; 58].

[2] The Facebook post stated, "my office has placed signs in front of every registered sex offender's house to notify the public that it's a house to avoid. Georgia law forbids sex offenders from participating in Halloween, to include decorations on their property … Make sure to avoid houses which are marked with the attached posted signs in front of their [sic] residents." See [Doc. 20, Ex. P3]. Long readily conceded that no law prevents registrants from participating in Halloween. [T. 57; Ex. P3].

[3] Counsel for Respondents represented at the injunction hearing that the policy was, "an across the board placement of signs except for people in prison." [T. 21].

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

requires registrants to place signs or other materials at their residence directly or indirectly identifying themselves as sex offenders. [Doc. 40 ¶53]. Implementation of the policy was not based on any individualized determination of any danger posed by registrant to the community, nor any process or analysis which would determine whether or not a residence was unsafe, as stated on the signs. [Doc. 17 at 17(C)(1); 19 at 1; T. 21-22].

Long felt the policy was necessary because children would be trick-or-treating in neighborhoods and because of concern that "very rural parts in our county" did not have access to the Sex Offender Registry ("Registry"). [T. 41-42]. Long testified that he is obliged to, "notify the public of the presence of sex offenders," and that he believed, "it was imperative that this was an extension of the notifications we already[4] do to warn the public." [T. 42; 50]. Long confirmed that there have not been "any problems with [Butts County's] registered sex offenders in Halloween" since he took office in 2013. [T. 65]. Long intended to implement the policy again last Halloween and beyond. [T. 46].

Butts County Sheriff's Deputies Jeanette Riley and Scott Crumley were tasked with entering each registrant's property,

---

[4] The Registry is published on the internet as well as a number of county buildings. [T. 60-61].

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

placing the signs and distributing the flyers. See [T. 70; Doc. 40 ¶¶2; 5, 6, 28; Crumley Dep. 10]. They did so the week prior to October 31, 2018. See [Doc. 40 ¶¶17, 25, 34; Reed Dep. 18; Holden Dep. 14; McClendon Dep. 15; T. 12, 13, 28-29, Ex. P2]. Both deputies were wearing attire, including badges, weapons and handcuffs, which clearly identified them as Sheriff's deputies. [T. 86; Crumley Dep. 10-11; 12-13]. The deputies did not have permission to come onto any of the Petitioners' property to implement this policy. [Doc. 40 ¶¶17, 25, 34; Reed Dep. 18; Holden Dep. 14; McClendon Dep. 15; T. 12, 13, 28-29, Ex. P2].

Riley confirmed that the signs were affixed, "as close to the roadway as I could so they could be seen from both ways," claiming that they were placed in rights-of-way. [T. 81]. However, prior to going to registrants' homes, the deputies did not research where to place signs on the specific properties in order to assure that they were on rights-of-way. [Crumley Dep. 14]. Instead, the deputies estimated, placing signs "in the general vicinity within probably 2 feet front or back of the mailbox or next to the driveway." [Crumley Dep. 14]. Even if the deputies had conducted research as to the exact location(s) of any rights-of-way at registrants' property, they did not take measurements on site to assure that the signs were placed in rights-of-way.

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

[Crumley at 14-15]. It is undisputed that the deputies did not place all signs in rights-of-way including placing a sign inside the apartment of a registrant. [Crumley Dep. 24; 29]. It is undisputed that the BCSD did not create any kind of documentary record as to where they placed signs so as to confirm that the signs were placed in rights-of-way.

Petitioners Christopher Reed, Reginald Holden and Corey McClendon (collectively "Petitioners") are all required to register and abide by the laws of the State of Georgia pertaining to registered sex offenders found in O.C.G.A. §42-1-12, *et seq.*. See [Doc. 40 ¶¶1, 2, 3, 15, 22]. None of them has been classified as a heightened risk of recidivism by the Sexual Offender Registration Review Board (SORRB). [Doc. 17 at 3]. See also O.C.G.A. §§42-1-12(a)(12), (13) & (21) & 42-1-14.[5] Each Petitioner has the authority to exclude people from his residence and none of them allows the general public access to his property for the purpose of displaying signs or messages. [T. 14, 32; Reed Dep. 21-22; Reed Dec. ¶7].

Nonetheless, at Long's direction, Riley and Crumley came onto each Petitioner's property without permission and placed a sign thereon. [Doc. 40 ¶65]. Petitioners objected to placement of the signs, but were threatened with consequences

---

[5] This Court concluded that each Petitioner had been rehabilitated and was leading a productive life. [Doc. 17 at 3].

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

(which they understood to mean arrest) if they removed, contradicted, defaced or even just obscured the signs. [Doc. 40 ¶35; T. 24, 32; Holden Dep. 15; Crumley Dep. 16-17; Reed Dec. ¶8]. The signs made Petitioners concerned for their safety, as well as the safety of their families and property. [T. 16, 33; Reed Dep. 21, 45; Holden Dep. 26-27). After Petitioners and/or their agents informed Respondents that they were not permitted to enter their property, on or about November 1, 2018, Riley and Crumley again entered the property to collect the signs. [Doc. 40 ¶¶21, 30, 37, 67; T. 13].

## II.  Argument & Citation of Authority

### A.  Summary Judgment Standard

Fed. R. Civ. P. 56(a) mandates summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306, 1313(II)(11th Cir. 2009). The moving party "bears 'the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of the 'pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party adequately supports its motion, the burden shifts to the respondent to "establish that there is a genuine issue of material fact as to" the Counts which are the subject of the motion. <u>Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86(III), 89 L.Ed.2d 538 (1986). <u>See also</u> <u>Burger King Corp.</u>, 572 F.3d at 1313(II).

### B.    *The BCSD Violated Petitioners' Right To Free Speech*

"It is … a basic First Amendment principle that freedom of speech prohibits the government from telling people what they must say." (internal quotes omitted) <u>Agency for Int'l Development v. Alliance for Open Soc'y Int'l, Inc.</u>, 570 U.S. 205, 213(III), 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013)(quoting <u>Rumsfeld v. Forum for Academic and Institutional Rights, Inc.</u>, 547 U.S. 47, 61(III)(A)(1), 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006)). The Supreme Court has also said that, "*all* speech inherently involves choices of what to say and what to leave unsaid." <u>Pacific Gas & Elect. Co. v. Pub. Utilities Comm'n of Ca.</u>, 475 U.S. 1, 11(III)(A), 106 S.Ct. 903, 89 L.Ed.2d 1 (1986). The First Amendment therefore forbids coerced speech.

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

See e.g. Janus v. American Fed. of State, Cty., and Mun. Employees, Council 31, ___ U.S. ___, 138 S.Ct. 2448, 2463(III)(A), 201 L.Ed.2d 924 (2018). The Supreme Court has observed:

> [t]he essential thrust of the First Amendment is to prohibit improper restraints on the *voluntary* public expression of ideas; it shields the man who wants to speak or publish when others wish him to be quiet. There is necessarily, and within suitably defined areas, a concomitant freedom *not* to speak publicly, one which serves the same ultimate end as freedom of speech in its affirmative aspect. (cit.s & internal quotes omitted) Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 559(III)(B), 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).

Janus similarly reaffirmed, "[t]he right to eschew association for expressive purposes is likewise protected." Janus, 138 S.Ct. at 2463(III)(A).

As far back as in West Virginia State Bd. of Ed. v. Barnette, 319 U.S. 624, 630, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the Court condemned government action punishing those who did not comply with compelled speech, noting, "[t]he sole conflict is between authority and rights of the individual." In his concurrence in Barnette, Justice Murphy noted:

> [t]he right of freedom of thought and of religion as guaranteed by the Constitution against State action includes both the right to speak freely and the right to refrain from speaking at all, except in so far as essential operations of government may require it for the preservation of an orderly society — as in

the case of compulsion to give evidence in court. 319 U.S. at 645 (Murphy, J. concurring).

At the injunction hearing and before the Eleventh Circuit, the parties generally have agreed that the Court should apply a four-element test to determine whether the state has compelled speech: "there must be (1) speech; (2) to which the plaintiff objects; (3) that is compelled; and (4) that is readily associated with the plaintiff." Doe 1 v. Marshall, 367 F.Supp.3d 1310, 1324(IV)(A)(1)(a)(M.D. Ala. 2019)(quoting Cressman v. Thompson, 798 F.3d 938, 951(IV)(A)(10th Cir. 2015)). Respondents have not seriously disputed that the signs are speech or that Petitioners objected to their message. See [Reed Dec. ¶5-6; McClendon Dec. ¶5-6; Holden Dec. ¶5-6]. Instead, the salient questions are whether Petitioners are compelled to display these signs, and whether the signs are "readily associated" with them. Doe 1, 367 F.Supp.3d at 1324(IV)(A)(1)(a).

### 1.  *Petitioners were compelled to display signs*

Petitioners faced criminal sanctions for not displaying signs. Long testified that registrants had no right to deny deputies access to their property to place the signs. [T. 47, 55]. The flyer, which was distributed along with the signs, warned that tampering with them was a criminal offense. [T. Ex. P1]. Petitioners all testified that Riley herself

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

threatened them with arrest if the signs were taken down and each Respondent agreed that there would be consequences for removing the signs. [T. 13, 23-24, 32, 53]. Each Respondent also agreed that Petitioners were not permitted to obscure, remove, destroy or dilute the signs, either. [Doc. 17 at 18; Doc. 40 ¶35; T. 15, 24, 32, 46-47; Crumley Dep. 16-17]. None of these facts is disputed.

Thus Respondents, "wield[ed] compulsory power that clearly abridged [Petitioners'] free speech rights" as regarded the display of the signs. Phelan v. Laramie Co. Comm. College Bd. of Trustees, 235 F.3d 1243, 1248(III)(10th Cir. 2000). See also Miller v. Skumanick, 605 F.Supp.3d 634, 644(A)(ii)(M.D. Penn. 2009); [Doc. 17 at 14(C)(1)].

### 2. Respondents purposefully associated the message on the signs with Petitioners

A sign in front of a home generally conveys the message that the residents of that home endorse the message and certainly associates the message with the resident. See e.g. Bland v. Roberts, 730 F.3d 368, 386(II)(B)(2)(4th Cir. 2013). See also Hannah v. Jefferson Co., 123 F.3d 1429, 1431(I)(11th Cir. 1997); [Doc. 17 at 17(C)(1)].

For all of Respondents' bluster about rights-of-way, what is not in dispute is that they placed the signs where they did specifically to associate them with Petitioners. [T.

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

46; 58]. Long testified that his goal was to associate the signs with the registrants who lived on those properties and to inform the public as to where registrants lived. Id.. To drive that point home, Long stated on Facebook that the BCSD "has placed signs in front of every sex offender's house to notify the public that it's a house to avoid." [T. Ex. P3].

Petitioners' homes are not generally open to the public and the public is not welcome to come and display signs at their homes, so any sign that *is* in front of a Respondent's home[6] would be most "readily associated" with him. [T. 14; 32]. See also [Doc. 17 at 17(C)(1)]. Cf. PruneYard Shopping Center v. Robins, 447 U.S. 74, 77(I), 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). The flyer stated that the signs were placed, "due to a registered Sex Offender [sic] is registered to be living at this address." [T. Ex. P2]. The flyers' threat of criminal penalties for tampering with the signs was only directly communicated to the registrants and their families, not neighbors to whom the signs were certainly accessible. [T. 52; Reed Dec. ¶9; Holden Dec. ¶9; McClendon Dec. ¶9]. For

---

[6] Rights-of-way are not specially marked or otherwise apparent to a passerby. See [T. 78]. What is apparent is the home behind the right-of-way, the mailbox in front of it and the driveway beside it. See Id. Ex. P2. To any casual viewer, a right-of-way is indistinct from a front yard, leaving hollow any suggestion that Petitioners will not be associated with the signs simply because they lie within an unmarked, artificial boundary.

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

that matter, no such warning was published on the sign itself to communicate the penalty for tampering to the public, indicating not only an association between the signs and the registrants, but the compulsory nature of that association.

This, then, "was a case in which the government itself proscribed the message, required it to be displayed openly on appellee's personal property that was used 'as part of his daily life' and refused to permit him to take any measures to cover up the motto." PruneYard, 447 U.S. at 87(V).

### c. *The Policy Is A Content-Based Restriction On Speech, Thus Strict Scrutiny Applies*

Respondents have previously argued that strict scrutiny does not apply to this case, analogizing the signs to a warning label. See Discount Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509 (6th Cir. 2012). In that case, the Court held, "[t]he textual warnings … provide undisputed factual information about the health risks of using tobacco products … The health risks of smoking tobacco have been uncovered through scientific study. They are facts." Discount Tobacco City & Lottery, Inc., 674 F.3d at 560(B)(2). In doing so, that case distinguished itself from Entertainment Software Ass'n v. Blagojevich, 469 F.3d 641, 650(II)(C)(7th Cir. 2006), because, by contrast, labelling a video game "sexually explicit" involves reliance on "widely divergent

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

local standards." (internal quotes omitted) <u>Discount Tobacco City & Lottery, Inc.</u> at 560-61(B)(2). Thus, where text like the warning label "provide[s] undisputed factual information," as opposed to "the government's opinion" about the hazard presented, a lower standard of scrutiny is merited. <u>Id</u>. at 561(2)(B).

Respondents' sign policy is compelled speech which, "is a content-based regulation of speech," because it, "alters the content of [Petitioners'] speech," compelling them to convey Long's *opinion* that their property is a public safety hazard instead of not speaking on the topic at all, and is thus subject to strict scrutiny. <u>NIFLA v. Becerra</u>, ___ U.S. ___, 135 S.Ct. 2361, 2371(II)(A)&(B), 201 L.Ed.2d 835 (2018). <u>See also</u> <u>Turner Broadcasting System, Inc. v. FCC</u>, 512 U.S. 622, 642(II)(B), 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

Strict scrutiny requires Respondents to demonstrate that they have "a compelling interest" in the regulation and, "must have adopted the least restrictive means of achieving that interest." <u>Doe 1</u> at 1326(IV)(A)(1)(b). Respondents' stated interest in the policy is, "protecting the public from sex offenders," which is compelling.[7] [T. 112]. <u>See</u> <u>also</u> [Doc. 17

---

[7] As the Court suggested in its previous order, this interest appears newly realized, since Butts County had always had children trick-or-treating in neighborhoods, albeit in fewer numbers when Halloween on the Square was available. [Doc. 17 at 6(I), 19(C)(2);

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

at 18(C)(2)]. In fact, Georgia had the *exact same* interest in creating the Registry scheme, including O.C.G.A. §42-1-12(i)(3). See Rainer v. State, 690 S.E.2d 827, 830(2), 286 Ga. 675 (Ga. 2010). By definition this is the "least restrictive means for achieving" the goal of alerting the public where registrants live. Doe 1, supra. If that were not enough, Long never had a problem with registrants in his county prior to 2018, indicating that the policy was unnecessary. [T. 65].

Long testified that the policy "expan[ded]" O.C.G.A. §42-1-12(i)(3) and offers a contrived reason, the lack of availability of internet service throughout the county, for doing so. [T. 42; 59]. Yet Long used Facebook to announce the policy, agreeing that it was an "effective way to get the word out," and Facebook is only available on the internet. (T. 42; 58; 97; 109). The 2018 posting was so effective that Long testified:

---

T. 38-39; Crumley Dep. 27-28]. Children, in fact, travel from door-to-door in Butts County for various activities all year, e.g. selling Girl Scout cookies, raising money for little league sports and/or for middle and high school fundraising efforts. [Crumley Dep. 26-27]. Though Petitioners do not question Long's concern for children, Long has not explained why the signs were not necessary to warn them prior to 2018 or at other times of the year. Indeed, it would seem if the Court were inclined to allow Long to compel display the signs at Halloween, there would be no reason not to let him do so throughout the year. As argued, *infra*, Georgia law does not confer such authority on sheriffs or any other law enforcement official.

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

> I don't know that we would have to do another Facebook post because this was the first year of the sign. I don't think a Facebook post would be necessary. I think everybody in my community, of course, is aware of the signage. [T. 65].

Since Long concedes that the internet is a highly effective means of communicating with county residents and since the Registry is available to residents on the internet, Long's policy of compelling Petitioners' speech by placing signs in front of their homes is not the least restrictive means for advancing his compelling interest in protecting children.

### D. *The Policy Exceeds Long's Authority Under The Law*

The crux of Respondents' defense is that they lawfully placed the signs in rights-of-way, hence the signs are government speech, hence the signs are not compelled speech. In its order granting the preliminary injunction, the Court concluded that Respondents, "offer[ed] no evidence or authority to support the conclusion that Sheriff Long, either as the Sheriff or as a private citizen, has the right to place signs on rights-of-way in front of private residences." [Doc. 17 at 10].

Respondents' contrary position is unsustainable because they were not authorized to place these signs in rights-of-way. See O.C.G.A. §32-6-51(a)(1). See also [Doc. 17 at 10].

O.C.G.A. §32-6-51(a)(1) states:

> [i]t shall be unlawful for any person to erect,
> place, or maintain within the dedicated right of
> way of any public road any sign, signal, or other
> device except as authorized by this subsection or
> subsection (d) of this Code section or as required
> or authorized by Code Section 32-6-50 or any other
> law.

O.C.G.A. §32-6-51(d), which primarily addresses bus shelters, is inapplicable to this case. Likewise O.C.G.A. §32-6-50, which addresses the erection and maintenance[8] of, "signs, signals, markings, or other traffic-control devices," is similarly inapplicable. Respondents cannot point to any law which authorizes, let alone "require[s]" them to erect these signs. Therefore, Respondents' claim that they are deputized by "other law" to place these signs in front of Petitioners' homes is meritless. O.C.G.A. §32-5-51(a)(1).

### 1. Long's authority is limited by O.C.G.A. §§42-1-12(i)(3)(A)-(E)

As argued above, O.C.G.A. §42-1-12(i)(5) does not authorize Long to place signs in front of individual registrants' homes or force them to adopt a message that their residences are unsafe. See [Doc. 17 at 9(III)(A)]. O.C.G.A.

---

[8] Rights-of-way are not ubiquitous areas used by various government entities for all manner of reasons. O.C.G.A. §32-6-51(a)(1), read in conjunction with O.C.G.A. §32-6-50, indicates that, consistent with each Respondent's testimony, rights-of-way are meant to be used for, "traffic-control," signs and devices erected and maintained by "the department" of Transportation. O.C.G.A. §32-6-50(a). See also O.C.G.A. §32-1-3(9); [Doc. 17 at 10; T. 48, 90; Crumley Dep. 23].

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

§42-1-12(i)(5) authorizes Long to exercise the authority created by O.C.G.A. §§42-1-12(i)(3)(A)-(E) and nothing more. See O.C.G.A. §§42-1-12(i)(3)(A)-(E), (4) & (13). See also Wittman v. Koenig, 831 F.3d 416, 424(III)(7th Cir. 2016); Yates v. United States, 574 U.S. 528, 563(II)(A), 135 S.Ct. 1074, 191 L.Ed.2d 64 (2015)(Kagan, J. dissenting) (noting that reference statute's language and structure are appropriate to construe arguably ambiguous language in a statute). It does not authorize sheriffs to force registrants to associated themselves with an *ultra vires* opinion that their homes are unsafe.

### 2. O.C.G.A. §42-1-12(j)(2) provides context to O.C.G.A. 42-1-12(i)(5)

O.C.G.A. §42-1-12(j)(2) notes that "[t]he sheriff's office may post the list of sexual offenders in any public building in addition to those locations enumerated in subsection (h) of this Code section," confirming that the preceding subsection contains a plenary list of locations where the sheriff may identify registrants. See Wittman, 831 F.3d at 424(III). Moreover, the subsection authorizes sheriffs to post the "list" of registrants, rather than singling out individuals as Long has, and limits the authority to do so to "any public building" rather than any publicly

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

visible *location*, like a park, a jogging trail or Petitioners'
homes.

### 3.    *The policy creates additional burdens on registrants*

The policy places an affirmative burden on registrants
to allow the signs to be displayed at their residences
communicating that they endorse or adopt the message and
further evincing that Long's policy is not authorized by
Georgia law t. The Registry scheme contains no authority for
sheriffs to create such an obligation for registrants. In
fact, registrants have *no obligation* to inform the public of
their status, merely to keep biographical information current
with law enforcement who, in turn, bear the obligation of
notifying the public. See O.C.G.A. §42-1-12(f).

### 4.    *Long's interpretation would greatly extend sheriffs' power over the Registry*

Long's idiosyncratic "extension" of O.C.G.A. §42-1-
12(i)(5) would allow him or any other sheriff almost limitless
authority to "inform the public" in ways Georgia's
legislature did not contemplate. *Per* Long, sheriffs could
require registrants to wear placards identifying them as
unsafe anytime they were outside their home, affix a scarlet
"R" to their clothing to denote their registrant status or,
indeed, to have a sign in front of their home, year-round, to
inform the public that their house threatens community

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

safety. There is no evidence that Georgia's laws vest Long with so much discretionary authority.

Long's position is that he, a government actor, has the authority to "exten[d]" codified law at the expense of the private citizens' rights. This position flips one of the most fundamental principles of the Bill of Rights – protecting individual liberty against government abuse of authority – on its head. See generally U.S. Const. Amend.s I & IX. See also Ga. Const. Art. 9, §1, ¶III(a)(stating that sheriff's "qualifications, powers, and duties" are defined by, "general law"). "The Constitution, in its genesis and historical evolution, has been a barrier erected between the individual citizen and collective government for the protection of the rights of the individual citizens against potential abuses of power by the government." Barham v. Edwards, 566 F.Supp. 1497, 1499-1500 (M.D. Tenn. 1983). Because O.C.G.A. §42-1-12(i)(5) does not authorize[9] Long to create signs identifying individual registrants' homes, O.C.G.A. §32-6-51(a)(1) is not a refuge for him and this Court should therefore grant Petitioners' motion.

---

[9] If Respondents were acting outside of their authority under O.C.G.A. §42-1-12, then the signs were not the government's message, but that of Long individually, as compelled under color of law by his deputies, and surely authorizes the Court to conclude he has violated Petitioners' rights.

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

### E.    *The Government Speech Doctrine Is Inapplicable*

The Supreme Court has noted that, "members of the public retain strong free speech rights when they venture into public streets and parks." (cit.s and internal quotes omitted). Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469(II)(B), 129 S. Ct. 1125, 172 L. Ed. 2d 853 (2009). Thus Petitioners still "retain strong free speech rights," even in public places like alleged rights-of-way, and cannot be compelled to endorse a message thereon. Id.. Respondents nonetheless insist that Long's policy, *vis-à-vis* the signs, represents government speech free from First Amendment scrutiny.

Respondents' efforts to expand the government speech doctrine to permit government actors, acting *ultra vires*, to stigmatize certain citizens individually – and in Petitioners' case, falsely –in the name of "community safety" harken to Justice Alito's warning:

> while the government-speech doctrine is important—indeed, essential—it is a doctrine that is susceptible to dangerous misuse. If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints. For this reason, we must exercise great caution before extending our government-speech precedents. Matal v. Tam, ___ U.S. ___, 137 S. Ct. 1744, 1758(III)(A), 198 L. Ed. 2d 366 (2017).

### 1.    *Rights-of-way were not used exclusively in placing signs*

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

Crumley confirmed that the officers had required an apartment dweller to place a sign in a window inside his apartment, thus confirming that rights-of-way were not rigidly used as Respondents have claimed. Crumley confirmed that neither he, nor Riley, conducted any research as to the locations of rights-of-way on the specific properties they were visiting in order to ensure that the signs were placed in those areas.[10] [Crumley Dep. 14]. Nor did the deputies take any measurements at the residences to assure that the signs' placement was consistent with any research they *could have* done. Id. at 14-15. Thus, Respondents cannot even assure that they did not place the signs on registrants' property. Thus, to the extent that Respondents' government speech argument relies on the notion that they did not place signs on Petitioners' lawns, it must fail. See e.g. Summum, 555 U.S. at 470(III).

Further, although the signs state that they are Long's property, they are in front of Petitioners' homes. [T. 23; 30; Ex. P2]. See Bland, 730 F.3d at 386(II)(B)(2). Rights-

---

[10] At the injunction hearing, Respondents presented photos, allegedly marked with rights of way, but Riley only testified that those photos included "the same things that I look at on Google when I look at restrictions that is set for some of sex offender registers," not that she researched rights-of-way for the specific properties. [T. 80]. There is no evidence which would contradict Crumley's testimony that no such research occurred.

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

of-way are not visibly marked or otherwise apparent to a passerby.[11] [T. 78]. A right-of-way is indistinct from a front yard, leaving hollow any claim that Petitioners will not be associated with the signs because they lie within an unmarked, artificial boundary near their property. See [Doc. 17 at 12(B)].

### 2. *Summum does not dictate this Court's decision*

Respondents have previously relied on Summum to identify the signs as government speech. The case considers, "the application of the Free Speech Clause to a government entity's acceptance of privately donated, permanent monuments for installation in a public park." 555 U.S. at 467(II). Summum can be distinguished from this matter on a fundamental level: the speech contained in the signs is associated with Petitioners based on their placement at Petitioners' homes, not in a public forum like a park.

Summum held that, "[w]hile government speech is not restricted by the Free Speech Clause, the government does not have a free hand to regulate private speech on government property." 555 U.S. at 469(II)(B). Justice Stevens noted that, even under the government speech doctrine, the

---

[11] Thus, Crumley and Riley, as they were placing signs in front of registrants' homes, would have *had to* do special research to determine where the rights-of-way were located, yet did not do so.

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

government lacks, "free license to communicate offensive or partisan messages." Summum at 1139 (Stevens, J. concurring). One may conclude, then, that government speech, exempt from First Amendment protections, is limited to messages which, as noted by Justice Murphy are intended, "for the preservation of an orderly society," such as traffic signals. Barnette at 645 (Murphy, J. concurring).

The signs do not merely contain a factual statement, i.e. that a registered sex offender lives at the residence, they contain an unvetted, partisan and in Petitioners' case, false message: that the residence is a threat to community safety, with the imprimatur of the BCSD on the message. See [Doc. 17 at 17(C)(1)]. See also Matal, 137 S. Ct. 1744, 1758(III)(A); Discount Tobacco City & Lottery, Inc., supra. Accepting, arguendo, Respondents' claim that Long's policy intended to place signs only in rights-of-way, Petitioners are still shackled to this "partisan" message to which they object. Given the abundance of other ways for the public to obtain the underlying factual information in a more accurate and less individually stigmatizing format, it is not necessary "for the preservation of an orderly society" that signs be placed in Petitioners' yards. Summum, supra; Barnette, supra. Summum does not open the door for Respondents to impose this message.

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

Instead, Summum held that, "[t]he involvement of public officials in advocacy may be limited by law, regulation, or practice." 555 U.S. at 468(II)(A). In Georgia, those limitations are defined by O.C.G.A. §§42-1-12(i)(3)(A)-(E), (4) & (13), none of which authorizes Long to take the actions here challenged.

### 3.    *Analysis under Walker does not render the signs government speech*

Respondents have also relied on Walker v. Texas Div., Sons of Confederate Veterans, Inc., ___ U.S. ___, 135 S. Ct. 2239, 2246(II), 192 L. Ed. 2d 274 (2015). The factors which Walker identified as relevant to the government speech analysis were: the historical purpose of the message; what the message conveys to a reasonable observer and whether the government controlled the message. 135 S.Ct. at 2247(III)(A). See also Mech v. School Bd. of Palm Beach Co., 806 F.3d 1070, 1074-75(III)(11th Cir. 2015). Petitioners concede that the government controlled the message[12] in this case, but the other two factors strongly suggest the signs were not government speech.

Walker explained that "insofar as license plates have conveyed more than state names and vehicle identification

_____

[12] As this Court suggested, the fact that the government controlled the message buoys Petitioners' argument that the speech was compelled. (T. 102). See also Reed at *7(C)(1).

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

numbers, they long have communicated messages from States."
135 S.Ct. at 2248(II)(B). Yard signs do not share the same
historical ties to government messages that license plates
do. Yard signs typically alert the public that a home is for
sale, that a baby has been born or that the resident supports
a particular political candidate/issue. The Supreme Court
observed as much in City of Ladue v. Gilleo, 512 U.S. 43, 54-
55(IV), 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994):

> [s]igns that react to a local happening or express
> a view on a controversial issue both reflect and
> animate change in the life of a community. Often
> placed on lawns or in windows, residential signs
> play an important part in political campaigns,
> during which they are displayed to signal the
> resident's support for particular candidates,
> parties, or causes. They may not afford the same
> opportunities for conveying complex ideas as do
> other media, but residential signs have long been an
> important and distinct medium of expression.

For the reasons explained, *supra*, governments have not
historically conveyed messages through yard signs.

Walker further noted that license plates, the forum for
the government speech in that case, "are often closely
identified in the public mind with the [State]." 135 S.Ct.
at 2248(II)(B). Mech framed this question as whether,
"observers reasonably believe the government has endorsed the
message." 806 F.3d at 1076(III)(B). As the Court has
observed, yard signs placed in front of homes are not "often
closely identified in the public mind with the [State]," so

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

they lack the close association that a message placed in a public park or a banner[13] hung at a public school has to government speech. [Doc. 17 at 17(C)(1)]. Instead, when a sign is placed in front of a residence, its location and message will usually be closely associated with the residents, e.g. when a political sign is placed in front of a home, its resident is perceived to support the candidate or cause referenced thereon. <u>See</u> <u>City of Ladue</u> 512 U.S. at 54-55(IV). <u>See</u> <u>also</u> <u>Bland</u> at 386(II)(B)(2); [Doc. 17 at 17(C)(1)].

A commonality among <u>Summum</u>, <u>Walker</u> and <u>Mech</u> which distinguishes all three[14] from this case is that, in each, a citizen or group of citizens sought to speak on government property: a monument, a license plate and a banner. Here, in contrast, as the Court noted in its previous order, Petitioners are not asking to speak, they are simply asking not to be compelled to speak *vis-à-vis* endorsement of a government message closely associated with them. [Doc. 17 at

---

[13] The signs certainly cannot be viewed as "gestures of gratitude … a common form of government speech" as the banners in <u>Mech</u> were. 806 F.3d at 1077(III)(B).

[14] This also distinguishes the present case from, <u>Johanns v. Livestock Mktg. Ass'n</u>, 544 U.S. 550, 559(II), 125 S. Ct. 2055, 161 L. Ed. 2d 896 (2005), where "the speech was, or was presumed to be, that of an entity other than the government itself."

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,**
**Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

16(C)(1)]. Cf. Wooley v. Maynard, 430 U.S. 705, 714(4)(A),
97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

### 4.   *Labelling the signs government speech does not end the analysis*

In Matal, the Supreme Court noted that Walker "likely
marks the outer bounds of the government-speech doctrine."
137 S.Ct. at 1760(III)(A). Coupling this with Justice
Breyer's observation in Summum that, "the 'government speech'
doctrine is a rule of thumb, not a rigid category" supports
the conclusion that invoking government speech is not
talismanic for Respondents. 555 U.S. at 484 (Breyer, J.
concurring). This Court already acknowledged this, noting
that "the Supreme Court has never said that government speech
cannot also be, or can't become, compelled speech." [Doc. 17
at 16(C)(1) (citing Wooley, 430 U.S. at 715(4)(A))].

While Summum, supra, holds that, "the Free Speech Clause
… does not regulate government speech," it also,
"acknowledge[d] that … the First Amendment stringently limits
a State's authority to compel a private party to express a
view with which the private party disagrees." Walker at 2252-
53(IV). Thus, Walker noted, "the Free Speech Clause itself
may constrain the government's speech if, for example, the
government seeks to compel private persons to convey the
government's speech." Id. at 2246(II). See also Wooley at

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

714(4)(A). <u>Walker</u> expressly noted that, "compelled private speech [was] not at issue" in that case. <u>Id</u>. at 2253(IV). So, although, "the government-speech and compelled-speech doctrines are concerned with different things," they may intersect where the government seeks to foist a government message onto a citizen. <u>Cressman</u>, 798 F.3d at 950(III)(B).

The Court held, and Petitioners agree, that the question of whether government speech has become compelled speech:

> turns on whether, based on the facts of the case, the government speech appeared to be endorsed by, adopted by, or, again, depending on the facts, whether the speech is sufficiently associated with a plaintiff. [Doc. 17 at 16(C)(1)].

The signs in front of the homes were intended to associate the message, that the home is unsafe, with Petitioners in a compulsory manner. [T. 58]. So even if the Court were to conclude that the signs constituted government speech, it still violates the First Amendment to *compel Petitioners*, by association, to "express a view with which [they] disagree[]." <u>Id</u>.. <u>See also</u> [Doc. 17 at 16(C)(1); Reed Dec. ¶¶5-6; Holden Dec. ¶¶5-6; McClendon Dec. ¶¶5-6].

### F.   *Respondents Trespassed On Petitioners' Property*

"A cause of action for the tort of trespass exists when a person *unlawfully* interferes with another person's right of enjoyment of private property. Under Georgia law, a state officer does not commit trespass when he acts within the scope

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

of his official duties." Hill v. Macon Police Dept., ___ F.Supp.3d ___, 2013 WL 594200 at *13(II)(B)(2)(M.D. Ga. 2013). If officers enter property not "in the lawful discharge of their duties," they have trespassed. Poe v. State, 563 S.E.2d 904, 905(1), 254 Ga. App. 767 (Ga. App. 2002). See also Morton v. McCoy, 420 S.E.2d 40, 41-42(3), 204 Ga. App. 595 (Ga. App. 1992). The Supreme Court recently affirmed that an officer's mere act of walking onto a citizen's driveway without permission, a warrant or exigent circumstances constituted a trespass onto that property. Collins v. Virginia, ___ U.S. ___, 138 S.Ct. 1663, 1671(II)(B)(2), 201 L.Ed.2d 9 (2018). Accord Atkins v. State, 325 S.E.2d 388, 391(3), 173 Ga. App. 9 (Ga. App. 1984).

The facts underlying Petitioners' trespass claims are wholly undisputed by either party and what remains is purely a question of whether the law authorized Respondents to come onto their property to implement Long's policy. If the law authorized the policy, Respondents acted "within the scope of [their] official duties" when they came onto Petitioners' property, even without Petitioners' permission. Hill, 2013 WL 594200 at *13(II)(B)(2). Petitioners contend, however, that Respondents had no authority to do so. See Doe 1, supra. See also O'Rourke v. Hayes, 378 F.3d 1201, 1208(II)(11th Cir. 2004)(holding that officers trespassed at office which was

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

closed to the public absent a warrant or exigency). In each instance, Respondents were entering private property which was closed to the public in order to implement the policy, emphasizing that their actions constituted trespassing. See O'Rourke, 378 F.3d at 1208(II). The deputies therefore were not executing any lawful duty when they entered Petitioners' property and were, instead, trespassing, making them liable therefor. See Collins, 138 S.Ct. at 1671(II)(B)(2).

Petitioners are entitled to summary judgment on their trespassing claim. See O'Rourke at 1208(II).

### G.    Compelling Petitioners To Display The Signs On Their Property Constitutes A Taking

A permanent physical occupation of one's property authorized by the government, "constitutes a 'taking' of property for which just compensation is due under the Fifth and Fourteenth Amendments to the Constitution." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 421, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). This is so "without regard to the public interests that [the occupation] may serve." Loretto, 458 U.S. at 426(II).

"Ordinarily … if government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking." Arkansas Game & Fish Com'n v. United States, 568 U.S. 23, 26, 133 S.Ct.

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

511, 184 L.Ed.2d 417 (2012). <u>See also</u> <u>First English</u>
<u>Evangelical Lutheran Church of Glendale v. Los Angeles</u>
<u>County</u>, 482 U.S. 304, 317-19(II), 107 S.Ct. 2378, 96 L.Ed.2d
250 (1987). <u>Accord</u> <u>Chmielewski v. City of St. Pete Beach</u>, 890
F.3d 942, 950(I) (11th Cir. 2018). "[P]hysical takings are
compensable, even when temporary. The duration of the taking
goes to damages, not to whether a compensable taking has
occurred." <u>Ladd v. United States</u>, 630 F.3d 1015, 1025(C) (Fed.
Cir. 2010).

Justice Brandeis observed, "[a]n essential element of
individual property is the legal right to exclude others from
enjoying it. If the property is private, the right of
exclusion may be absolute; if the property is affected with
a public interest, the right of exclusion is qualified."
<u>International News Svc. v. Associated Press</u>, 248 U.S. 215,
249, 39 S.Ct. 68, 63 L.Ed. 211 (1918)(Brandeis, J.
dissenting). <u>See also</u> <u>Loretto</u>, 458 U.S. 419, 433(II)(A), 102
S.Ct. 3164, 73 L.Ed.2d 868 (1982)(quoting <u>Kaiser Aetna v.</u>
<u>United States</u>, 444 U.S. 164, 176(II)(B), 100 S.Ct. 383, 62
L.Ed.2d 332 (1979)); <u>Pacific Gas & Elec. Co.</u> at 22-23
(Marshall, J. concurring).

Petitioners have established that each has the right to
exclude people from his residence, where, "the right of
exclusion may be absolute." <u>International News Svc.</u>, 248 U.S.

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

at 249 (Brandeis, J. dissenting). Although Respondents contend that the signs were placed in public locations, Crumley testified that the deputies did not research where to place signs on the specific properties in order to assure that they were on rights-of-way, nor took any measurements on site which would have confirmed any research they *claim to have done*. [Crumley Dep. 14-15]. It is undisputed that the deputies did not place all signs in rights-of-way. [Crumley Dep. 24; 29]. It is undisputed that the BCSD did not create any kind of documentary record as to where they placed signs so as to confirm that the signs were placed in rights-of-way.

McClendon's photograph confirms that his sign was in his yard, behind his mailbox. [T. Ex. P2]. The Butts County Code of Ordinances states "[t]he right-of-way is the perpendicular distance across the street from property line to property line." [T. 74, Ex. P4]. So a right-of-way is the street that divides the properties and nothing more in Butts County. Riley testified, in the hypothetical, that she was placing signs "equal to," or behind mailboxes (away from the street), which is indisputably beyond the right of way as defined in the Code of Ordinances. [T. 72-73].

The occupation of Petitioners' property was indisputably not permanent; it lasted approximately a week straddling October 31, but the duration of the occupation, "goes to

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

damages, not to whether a compensable taking has occurred." Ladd, 630 F.3d at 1025(C). It is undisputable that Petitioners were in no way compensated for this taking. [T. 17, 34; 55; Crumley Dep. 25; Reed Dec. ¶10]. Finally, it is equally undisputable that the placement of signs on Petitioners' property compelled the use of their property for the display of a message with which they disagreed, as discussed, *supra*. See Pacific Gas & Elec. Co. at 22-23 (Marshall, J. concurring).

Thus, Petitioners have demonstrated that their property was taken within the contemplation of the Fifth and Fourteenth Amendments and the Court should grant summary judgment on these claims. Loretto at 426(II). See also Arkansas Game & Fish Com'n, 568 U.S. at 26.

**WHEREFORE,** Petitioners respectfully request that this Honorable Court:

- **GRANT** summary judgment to each Petitioner on every count;

- **AWARD** Petitioners damages against Respondents in their individual capacities for compensatory and economic harm, emotional distress, costs of suit and reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988 and any other applicable law;

- **DECLARE** that Respondents' policy and practice of coming onto the property of Petitioners and those similarly situated without permission to display signs announcing their sex offender status is unlawful and invalid;

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

- **GRANT** a permanent injunction against Respondents in their official capacities enjoining Respondents, their officials, agents, employees, assigns and all persons acting in concert or participating with them from implementing or enforcing the Butts County Sheriff's Department's policy of trespassing upon sex offenders' residences for the purposes of compelling them to display signs stating that they are registered sex offenders. If the Court is not inclined to issue an order on this motion prior to October 31, 2020, Petitioners request that it issue a similar, preliminary injunction for Halloween, 2020;

- **GRANT** such other and further relief as this Court may deem just and appropriate.


This 3 day of September, 2020.

Respectfully Submitted,

/s/ Mark Yurachek
_____
Mark Yurachek

/s/ Mark Begnaud
_____
Mark Begnaud
Ga. Bar No. 217641

Attorneys for Petitioners

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Brief in Support of Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system and that I served the same on the following by ECF and/or by transmitting it via electronic mail and/or by placing a copy in the United States Mail with adequate postage to ensure delivery:

    Jason Waymire, Esq.
    Williams, Morris, & Waymire, LLC
    Building 400, Suite A
    4330 South Lee Street
    Buford, Georgia 30518


Date: September 3, 2020            /s/ Mark Yurachek
                                   _____
                                   Mark Yurachek
                                   Georgia Bar No. 783599

The Law Offices of Mark Allen Yurachek & Associates, LLC
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church,
Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com