IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHRISTOPHER REED, REGINALD HOLDEN and COREY MCCLENDON, on behalf of themselves and a class of similarly situated persons, | |
| Petitioners, | CLASS ACTION |
| v. | CASE NO. 5:19-CV-00385-MTT |
| GARY LONG, in his official capacity and individually, JEANETTE RILEY, individually and SCOTT CRUMLEY, individually. | JURY TRIAL REQUESTED |
| Respondents. | |

**BRIEF IN SUPPORT OF PETITIONERS' RESPONSE[1] TO RESPONDENTS' MOTION FOR SUMMARY JUDGMENT**

*I.   Petitioners' Official Capacity Claims May Proceed*

If Long is an arm of the state acting within his authority as a law enforcement officer, Petitioners concede that he may not be sued in his official capacity for money damages. See Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336(II)(B)(11th Cir. 1999).

There are, however, exceptions to Eleventh Amendment immunity applicable to this case. See Larson v. Domestic Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 628 (1949). In his

---

[1] Petitioners adopt and incorporate by reference, *infra*, their motion for summary judgment, statement of material facts and brief in support thereof. For the sake of brevity, Petitioners have earnestly attempted not to repeat or regurgitate arguments and citations of authority presented therein.

1

confounding claim that *Petitioners* have violated *his* right to free speech, Long seemingly, "purports to act as an individual, not as an official," and thus would be liable for damages. Larson, 337 U.S. at 690. Petitioners also contend that Long's policy and the transgressions flowing therefrom, i.e. trespass and takings, exceeds his authority under O.C.G.A. §42-1-12(i) to notify the public of a registrant's pertinent information. As such, Long's, "actions … are considered individual and not sovereign action." Larson at 690.

Regardless of whether he was acting within his authority or not, Long may be sued for the prospective injunctive relief Petitioners have requested in this matter. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 64, 70-71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). See also Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524(III)(A)(11th Cir. 1995). Consequently, Long is not immune under the Eleventh Amendment for actions taken in his individual capacity, and he is not immune against claims for injunctive relief.

## II.  *Respondents Are Not Entitled To Qualified Immunity*

Qualified immunity protects individual government employees acting in their discretionary authority from monetary liability under 42 U.S.C. §1983 for conduct that does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730,

739, 122 S.Ct. 2508 (2002). The qualified immunity analysis requires the Court to determine whether there was a violation of a constitutional right, and whether the right was clearly established. See Hope, 536 U.S. at 736-42. See also Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). As the Eleventh Circuit has explained, a plaintiff can show the constitutional right violated was clearly established in three different ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. Shuford v. Conway, 666 F. Appx. 811, 817(II)(A)(ii)(11th Cir. 2016).

It is clearly established that physical takings of property for government use, even if temporary, "qualify as a taking." Arkansas Game & Fish Com'n v. United States, 568 U.S. 23, 26, 133 S.Ct. 511, 184 L.Ed.2d 417 (2012). Accord Chmielewski v. City of St. Pete Beach, 890 F.3d 942, 950(I) (11th Cir. 2018). The Supreme Court established in Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) – among many authorities discussed, *infra* – that citizens have the right not to display messages by the government with which they disagree, under the First Amendment. The Court subsequently reaffirmed, in Walker v. Texas Div., Sons of Confederate Veterans, Inc., ___ U.S. ___, 135 S.Ct. 2239, 2252-53(IV), 192 L.Ed.2d 274 (2015), "the First Amendment stringently

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

limits a State's authority to compel a private party to express a view with which the private party disagrees." Those cases, and their results, are directly applicable to the present case.

Moreover, the broad rule from Wooley and Walker was applied in Doe 1 v. Marshall, 367 F.Supp.3d 1310, 1324(IV)(A)(1)(a)(M.D. Ala. 2019), a case relied upon by Petitioners and the Court at the injunction stage which bears very close resemblance to the present matter. As such, the rights at issue in Petitioners' §1983 claims are both clearly established under Shuford's first and second criteria and Respondents are not entitled to qualified immunity.

It is beyond dispute that Riley and Crumley came onto each Petitioner's property without permission for the purpose of placing the signs and threatening Petitioners with arrest if they tampered with them. If that action was authorized by the law, qualified immunity would be a moot point because they did not commit the Georgia tort of trespass. See Hill v. Macon Police Dept., ___ F.Supp.3d ___, 2013 WL 594200 at *13(II)(B)(2)(M.D. Ga. 2013). However, if the law forbade them to take those actions, then they trespassed on Petitioners' property in violation of clearly established law. See e.g. Collins v. Virginia, ___ U.S. ___, 138 S.Ct. 1663, 1671(II)(B)(2), 201 L.Ed.2d 9 (2018). Accord Atkins v. State, 325 S.E.2d 388, 391(3), 173 Ga. App. 9 (Ga. App. 1984). This is very important as to Petitioners' trespass claims because Respondents' only defense to those claims is a standing

argument against Reed and McClendon (but not Holden)[2] which itself is an inaccurate recitation of the law as addressed, *infra*.

### III. Petitioners Have Standing To Bring Their First Amendment Claims

Respondents' first of many vexing arguments is that McClendon and Reed lack standing to raise their First Amendment claims because they are not property owners and thus lack a "First Amendment right to control messages posted on a third party's property." [Doc. 51-4 at 8]. Respondents apparently seek to graft the standing requirements for common law trespass claims onto Petitioners' First Amendment claims. Respondents cite no authority which would bridge the gap between lack of standing in a trespass claim to lack of standing in a First Amendment §1983 claim and do not even attempt to explain why the two should be linked.[3]

The requirements for standing are "injury in fact … a causal connection between the injury and the conduct complained of" and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (cit.s and internal quotes omitted) Lujan v. Defs. of Wildlife, 504 U.S. 555,

---

[2] In fact, Petitioners do not discern *any* defense by Respondents as to Holden's trespass claim, other than their assertion of immunity.
[3] Respondents are equally incorrect that Reed and McClendon, as lawful renters of the properties where they live, lack standing to bring legal claims concerning those properties. See Pineda v. Warden, Calhoun State Prison, 802 F.3d 1198, 1203-04(II)(11th Cir. 2015). See also U.S. v. Kittredge, 445 F.2d 1117, 1120 (5th Cir. 1971); Shockley v. Garner, 85 S.E.2d 412, 211 Ga. 271 (Ga. 1955)

560-61(II), 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Long's policy was directed at Petitioners, among others. Both McClendon and Reed[4] had a sign placed in front of his home identifying him as a registrant and his home as unsafe. Each testified to suffering some degree of embarrassment and concern for the safety of his property and family, because of Long's policy. A finding that the policy violates the First Amendment, and appropriate measures attendant thereto, would redress those injuries. See generally Eugster v. Washington State Bar Ass'n, ___ F.Supp.3d ___, 2015 WL 5175722 at *4(III)(B)(W.D. Wash. 2015). Petitioners thus each have standing to raise his First Amendment claim under §1983. See Lujan, 504 U.S. 560-61(II).

### IV. *Government Speech Does Not Authorize Long's Policy*

Respondents' government speech arguments were largely addressed in Petitioners' motion for summary judgment. Petitioners will address some specific points from Respondents' brief, *infra*. See [Doc. 50-1 at 20-28].

#### A.  *United Veterans Is Not Supportive*

Respondents cite United Veterans Mem'l & Patriotic Ass'n of the City of New Rochelle v. City of New Rochelle, 615 F. App'x 693, 694 (2d Cir. 2015), to support their position that the signs are government speech. However, United Veterans is readily

---

[4] Respondents do not appear to question Holden's standing to raise his First Amendment claim.

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

distinguished from the present matter. First, the speech there (display of an American flag), was in a location which "[was] open and accessible to the general public." 615 F. App'x at 694. Petitioners' homes were not generally open to the public and the public was not welcome to come and display signs at their homes. Respondents are likely to rely on the "right-of-way" refrain, but common sense must have some role in this analysis. McClendon's photographs show that the signs are directly in front of his home and, in fact, behind his mailbox. See (T. 30; Ex. P2). If the signs were not in his yard, they were right on the edge. (T. 14, 32). Rights-of-way are not specially marked or otherwise apparent to a passerby. As Petitioners have already noted, it is impossible to distinguish a right-of-way from Petitioners' front yards with the naked eye.

In this vain, Respondents have also argued, "the signs are intended to be placed on government property, which distinguishes this case from cases where a government insisted on displaying its message on private property," citing, for instance, Wooley, supra. [Doc. 51-4 at 10]. The distinction is misplaced. In Wooley, Walker v. Texas Div., Sons of Confederate Veterans, Inc., ___ U.S. ___, 135 S. Ct. 2239, 2246(II), 192 L. Ed. 2d 274 (2015) and Doe 1, the message was displayed on government property, but that property, license plates and a driver's license, was inexorably associated with an individual's property, e.g. their vehicle. 367 F.Supp.3d

7

at 1324(IV)(A)(1)(a). The distinction, for purposes of association, between a vehicle and its license plate is as significant as that of a right-of-way from the adjacent property, which is to say, not very.

United Veterans also held, "the flagpole was located in a public space used for park and recreation purposes, and a reasonable observer would think the flags were presenting a message from the City." 615 F. App'x at 694. Because the signs in this case are on or very near private property, it is far from certain that they, "bear no hint of endorsement by any Plaintiff." [Doc. 51-1 at 9]. Petitioners have already argued that a sign in front of a home generally suggests that the residents of that home endorse the message and so this case is much different than a flagpole in a park. See e.g. Bland v. Roberts, 730 F.3d 368, 386(II)(B)(2)(4th Cir. 2013)(noting a campaign "sign in his front yard would have conveyed to those passing his home that he supported [that] campaign)") See also Hannah v. Jefferson Co., 123 F.3d 1429, 1431(I)(11th Cir. 1997). Respondents argued in their motion that, "location is crucial to the effectiveness of the warning provided by the signs," which Long testified was intended to be associated with Petitioners. [Doc. 51-4 at 11]. Thus, association was apparent because of geography in United Veterans and that conclusion, equally applicable in this case, does not support Respondents' defenses.

8

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**

### B. Respondents' Claims Concerning Their Own First Amendment Rights Are Inapplicable

Respondents' second vexatious argument is that this case is distinct from Walker and Summum because, "Plaintiffs also want to control the Sheriff's message. Specifically, Plaintiffs want completely *to prevent* Sheriff Long from posting his message via the signs." [Doc. 51-4 at 10]. As Respondents themselves have emphasized, the First Amendment is not designed to protect a government "exercis[ing] the right to speak for itself." Mech v. School Bd. of Palm Beach Co., 806 F.3d 1070, 1074(III)(11th Cir. 2015). Rather, "[t]he Free Speech Clause of the First Amendment restricts government regulation of private speech; it does not regulate government speech." Mech, 806 F.3d at 1074(III). Respondents seek to distort the principle of free speech well beyond Walker's "outer bounds," and inadvertently invoke the Supreme Court's concern about "dangerous misuse" of the doctrine "[i]f private speech could be passed off as government speech by simply affixing a government seal of approval." Matal v. Tam, ___ U.S. ___, 137 S. Ct. 1744, 1758(III)(A), 198 L. Ed. 2d 366 (2017).

Respondents later argue that strict scrutiny of the signs is not appropriate because, they, "did not give up their First Amendment protections when they accepted public service roles, and the First Amendment protects their right to send the public safety message at issue here." But see Garcetti v. Ceballos, 547 U.S.

9

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

410, 418(II), 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)(holding "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom"). The First Amendment does not authorize Long to implement this policy. When Long is speaking *on behalf of the government*, and not as a private citizen, he does, in fact, give up some First Amendment protections. See Garcetti, 547 U.S. at 418(II). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Garcetti at 421(III).

The First Amendment, designed to protect the free speech of *citizens*, like Petitioners, from coercive behavior by *government actors*, like Long, does not grant Long "equal protections" to Petitioners because it does not apply to Long when he speaks on behalf of the government. See Id.. See also Mech, supra.

### V.  *Respondents' Arguments Regarding Compelled Speech Are Not Persuasive*

Respondents argue that, "the compelled speech doctrine is not implicated because there is no legitimate basis to conclude that any Plaintiff is compelled to endorse the message on the Sheriff's sign." [Doc. 51-4 at 12]. The myriad of legitimate reasons to conclude that Petitioners *are* compelled to endorse the signs' messages are addressed fully in their motion for summary judgment.

10

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com

[Doc. 50-1 at 7-15]. Petitioners will address some specific points from Respondents' brief, *infra*.

### A.  *The Law Requires Association, Not Endorsement*

An important point is that the standard for determining whether speech is compelled or not is whether it is "readily associated with" Petitioners, not whether or not they endorse it. Cressman v. Thompson, 798 F.3d 938, 948(III)(B)(10th Cir. 2015)(quoting Wooley, 430 U.S. at 717(4)(B), n. 15). As Justice Thomas wrote, "[t]he government may not, consistent with the First Amendment, associate individuals or organizations involuntarily with speech by attributing an unwanted message to them." Johanns v. Livestock Marketing Ass'n, 544 U.S. 550, 568, 125 S.Ct. 2055, 161 L.Ed.2d 896 (2005)(Thomas, J. concurring).

Respondents rely on Cressman[5] to claim that ready association requires Petitioners to show that they are "closely linked with the expression in a way that makes [them] appear to *endorse* the government's message." In Cressman it was necessary to stake out the contours of the message which the ubiquitous "reasonable

---

[5] It is notable that Respondents rely on Cressman because the Court in that case held, "the issue of whether a license plate is government speech is inapposite where, as here, the central question presented is whether an individual has been compelled to speak." 798 F.3d at 949(III)(B). Based on Respondents' authority, the Court should eschew the government speech analysis entirely and just consider the question of whether or not the policy violated Petitioners' rights.

observer" would derive from the symbolic speech, which ultimately determined the message to which the appellant needed to object in order to establish a claim for compelled speech. 798 F.3d at 958-59(IV)(C)(3)(a), 960(IV)(D). Because the message was *not* one to which the appellant objected, the Court ruled that his right against compelled speech was not violated. Id. at 964(IV)(D). In this case, Respondents have conceded that Petitioners object to the signs' message. See [Doc. 51-4 at 15]. The Tenth Circuit's analysis is therefore irrelevant to this case beyond its recitation of the basic test for compelled speech about which the parties generally agree. See Doe 1 at 1324(IV)(A)(1)(a).

In practice, it may be rare to find a compelled speech case where the message is "associated with" a citizen without it being perceived as endorsed by them. This case is not a useful example of that because the placement of the signs in Petitioners' front yards, as noted in the injunction order, strongly implies endorsement. [Doc. 17 at 17(C)(1)]. Nonetheless, Petitioners note that, by conflating association with endorsement, Respondents are subtly, and without warrant, nudging the bar for finding compelled speech higher than the law requires.

### B. *Compelled Speech Cases Have No Reasonable Observer Standard*

Respondents also attempt to graft a reasonable observer test onto the elements recited in Maynard and Cressman. In spite of

arguing that, "[u]nder binding precedent, Plaintiffs cannot make [the] case" that reasonable third parties would believe they endorsed the signs' message, Respondents fail to cite a binding precedent which commands them to do so in the first place. [Doc. 51-4 at 13]. Noting that "the state required its display on [Maynard's] personal vehicle and by necessity he had to drive the vehicle publicly," Respondents strain, but fail, to discern this standard from Wooley.[6] [Doc. 51-4 at 20]. The focus is on the bearer's objection to the message; association was presumed and not measured by a reasonable observer standard in that case. 430 U.S. at 715(4)(A).

Wooley concluded that forcing a vehicle owner "to use their private property as a 'mobile billboard' for the state's ideological message or suffer a penalty," compelled speech in violation of the First Amendment. Id.. The Court further held that New Hampshire lacked a compelling reason to force Maynard to do this. Id. at 716(4)(B). It did not, as Respondents have argued, apply a reasonable observer standard when determining association. Compelling residents to serve as stationary billboards for Long's

---

[6] The passage from Wooley cited as the source for this standard focuses not on other citizens' conception of the display, but the fact that the action, "forces an individual, as part of his daily life indeed constantly while his automobile is in public view to be the instrument of fostering public adherence to an ideological point of view he finds unacceptable." 430 U.S. at 714(4)(A).

community safety message should be subject to the same analysis and garner the same result.

Nor does PruneYard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), support Respondents' position. PruneYard, much like Respondents' other authorities, presents a factually distinct scenario: whether a business "open to the public for the purpose of encouraging the patronizing of its commercial establishments," could restrict members of the public from "exercis[ing] free speech and petition[ing] … on the property." 447 U.S. at 77(I). The PruneYard Court distinguishes itself from Wooley (and, by extension, this matter) because Wooley, "was a case in which the government itself proscribed the message, required it to be displayed openly on appellee's personal property that was used 'as part of his daily life' and refused to permit him to take any measures to cover up the motto." 447 U.S. at 87(V).

Petitioners have expressly testified that their residences are not open to public use. [T. 14, 32; Reed Dec. ¶7]. Public access to the property was, "[m]ost important" in PruneYard because "[t]he views expressed by members of the public in passing out pamphlets or seeking signatures for a petition … will not likely be identified with those of the owner." 447 U.S. at 87(V). Later, the Court notes that the owners, "are free to publicly dissociate themselves from the views of the speakers or handbillers," which Long categorically stated Respondents were not allowed to do. Id..

See also [T. 47]. Nowhere does PruneYard incorporate a reasonable observer standard.

### C.     The Placement Of The Signs Is Crucial

What largely resolves Respondents' concerns about reasonable observer standards and questions of endorsement is, as Petitioners have argued exhaustively, the placement of the signs. It suffices to say that Long's name appearing on the signs does not counterbalance the location and message any more than the state's name on the license plate in Wooley, supra, separated the vehicle's owner from that message. As in that case, as in Bland, supra, a yard sign in front of Petitioners' residences associates them with its message.

Respondents also seem to ignore or obfuscate the important point that in this case the association between the registrants and the signs was very much by design. See [T. 58; Crumley Dep. 15]. Thus, the Court need not engage in an extended consideration of whether a third party would associate the signs with Petitioners, because *that was the whole point of the policy*. Id.. In this way the association was even more explicit than a slogan on a license plate because in Wooley, the government was not actively seeking to tie the message to the driver.

In analyzing the association element of the compelled speech test Respondents attempt to contort precedent to fit this case and

15

again find the roundest of holes for the squarest of pegs. See Doe 1, 367 F.Supp.3d at 1324(IV)(A)(1)(a). They provide no precedent to support their specious claim that speech which is "*about* the plaintiff" is not "readily associated with" them. [Doc. 51-4 at 22-23]. A slogan on a license plate is not "about" the vehicle's operator, yet Wooley found that it *is* "readily associated with" her because of its location. 430 U.S. at 717(IV)(B) n. 15. So although a wanted poster and a prison sentence are no doubt "readily associated with" a particular individual, they are also not posted in front of that suspect/defendant's home. [Doc. 51-4 at 23 n. 10]. Further, those two examples are expressions of *fact*, whereas the signs assert Long's *opinion* that Petitioners' homes are community safety hazards and may not participate in Halloween (even though the law does not forbid Petitioners from doing so). See Discount Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509, 561(B)(2)(6th Cir. 2012).

### D.   *The Threat Of Arrest Is Evidence of Compulsion*

Respondents have glibly attempted to repackage their threats of arrest for obscuring, removing, destroying or diluting the signs as, "standard legal protections of government property." [Doc. 51-4 at 15]. See generally Medtronic Vascular Inc. v. Advanced Cardiovascular Sys., Inc., ___ F.Supp.3d ___, 2007 WL 4557794 at *12(B)(5)(N.D. Cal. 2007)(observing, "the parties' continued

dispute calls to mind the classic phrase, 'you say tomato, I say tomahto'"). Enforcing government property laws can infringe upon First Amendment rights, so it is of little value for Respondents to minimize their behavior in this way. See generally Dellums v. Powell, 566 F.2d 167, 176-77(I), 184 U.S.App. D.C. 275 (D.C. Cir. 1977). See also Wooley at 713(4).

### *E. Long's Post Hoc Modifications To His Hearing Testimony Are Unpersuasive*

Respondents' fear that they could not put up their own competing signs or in any way signal disagreement with Long's signs is, just like the flyers which were indisputably distributed with the signs, evidence of coercion. See [T. 15, 34, 46-47; Reed Dec. ¶8]. Having seen the effects of his response on the litigation, Long now explains that the only reason he simply responded, "no," when asked if a registrant could put up a sign with a competing message, was that they would need to place signs in the right of way to do so and they lacked the authority to do so. [T. 47; Long Dec. ¶6].[7] Just before he gave that curt response, Long was asked if "registrants were allowed to place objects like garbage cans or other signs in front of the signs to obstruct them from public view." [T. 46]. Long was then asked if doing so would cause him to

---

[7] Although Long alleges that "[l]ocal code enforcement officers routinely remove signs placed on public rights of way in Butts County," the record is conspicuously devoid of any such official confirming Long's claim or, for that matter, buoying Respondents' vital position that they were authorized to use rights-of-way to place the signs.

arrest a registrant. Long responded, "[n]ot necessarily just covering it up with something. I think what we would handle when we went there is whatever object is out there it's in the public right-of-way and you can't have stuff piled up in the public right-of-way." [T. 46-47].

So Long had no problem pointing out the need to keep the rights-of-way free of "stuff piled up," at the hearing, but failed to note the same need when asked about competing signage, in all likelihood because that was not why he simply responded "no" to the question. This response is *one of many* pieces of evidence that Respondents, "wield[ed] compulsory power that clearly abridged free speech rights." Phelan v. Laramie Co. Comm. College Bd. of Trustees, 235 F.3d 1243, 1248(III)(10th Cir. 2000).

### *VI. Convenience Does Not Justify Respondents' Violation Of Petitioners' Rights*

Respondents argue that the signs, "alleviate the need for an already busy citizen to undertake the time-consuming task of working through a lengthy list of sex offender names," etc.. [Doc. 51-4 at 28]. Petitioners sincerely hope that this society never becomes a place where convenience trumps constitutional rights. Thankfully, the United States Supreme Court adamantly agrees, noting that, "the tailoring requirement prevents the government from too readily 'sacrific[ing] speech for efficiency.'" (cit.s

and internal quotes omitted) McCullen v. Coakley, 573 U.S. 464, 486(IV), 134 S. Ct. 2518, 2534-35, 189 L. Ed. 2d 502 (2014).

### *VII. Sovereign Immunity Does Not Insulate Respondents*

Respondents attempt to cloak Long with sovereign immunity. The Georgia Supreme Court has held that the state is not immune from actions where the Constitution itself confers the right at issue. See Georgia Dep't of Natural Res. v. Ctr. for a Sustainable Coast, Inc., 755 S.E.2d 184, 190(2), 294 Ga. 593 (Ga. 2014). See also Lathrop v. Deal, 801 S.E.2d 867, 880-81(III)(A), 301 Ga. 408 (Ga. 2017). Ctr. for a Sustainable Coast, Inc., recognizing "that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases," specifically declined to extend Georgia's sovereign immunity protection to claims related to unlawful takings. 755 S.E.2d at 190(2). So, at a minimum, sovereign immunity does not insulate Respondents from Petitioners' takings claims.

**WHEREFORE**, Petitioners respectfully request that this Honorable Court:

- **DENY** Respondents' motion for summary judgment;

- **GRANT** summary judgment to each Petitioner on every count;

- **AWARD** Petitioners damages against Respondents in their individual capacities for compensatory and economic harm, emotional distress, costs of suit and reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988 and any other applicable law;

- **DECLARE** that Respondents' policy and practice of coming onto the property of Petitioners and those similarly situated without permission to display signs announcing their sex offender status is unlawful and invalid;

- **GRANT** a permanent injunction against Respondents in their official capacities enjoining Respondents, their officials, agents, employees, assigns and all persons acting in concert or participating with them from implementing or enforcing the Butts County Sheriff's Department's policy of trespassing upon sex offenders' residences for the purposes of compelling them to display signs stating that they are registered sex offenders. If the Court is not inclined to issue an order on this motion prior to October 31, 2020, Petitioners request that it issue a similar, preliminary injunction for Halloween, 2020;

- **GRANT** such other and further relief as this Court may deem just and appropriate.

This 8 day of October, 2020.

Respectfully Submitted,

/s/ Mark Yurachek

_____
Mark Yurachek

/s/ Mark Begnaud

_____
Mark Begnaud
Ga. Bar No. 217641

Attorneys for Petitioners

**20**

**The Law Offices of Mark Allen Yurachek & Associates, LLC**
**55 Ivan Allen Boulevard, Suite 830 • Atlanta, Georgia 30308 • 104 North Oak Street • Falls Church, Virginia 22046 • Phone: (470) 319-8721 • Fax (404) 220-7668 • mark@myappealslawyer.com**