**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER REED, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:19-CV-385 (MTT)** |
| | ) | |
| **GARY LONG, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

On September 24, 2019, the Plaintiffs filed suit challenging the Butts County Sheriff's Office's practice of placing warning signs at the residences of registered sex offenders before Halloween.  Doc. 1.  The Plaintiffs moved for a preliminary injunction, and the Court granted that motion in part.[1]  Docs. 6; 17.  Now the parties have filed cross-motions for summary judgment.  Docs. 50; 51.  And the Plaintiffs have moved to permanently enjoin the Sheriff's Office from placing signs in front of their homes, or, in the alternative, a new preliminary injunction barring sign placement this Halloween.  Doc. 50-1.  For the following reasons, the Plaintiffs' motions (Doc. 50; 50-1) are **DENIED**, and the Defendants' motion (Doc. 51) is **GRANTED in part** and **DENIED in part**.

---

[1] Although that order enjoined only the posting of signs for Halloween 2019 and thus expired after that Halloween, the Defendants appealed the order on November 27, 2019, pursuant to 28 U.S.C. § 1292(a). Doc. 22.  No party contends that the notice of appeal deprived this Court of jurisdiction to consider other issues and to resolve the current motions for equitable relief and summary judgment, which are based on a much more developed record.  *See Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. 1981).  This order does not address any issue concerning Halloween 2019.

## I. BACKGROUND

When Corey McClendon was 17 years old, he had sex with a female who was under the age of 16.  As a result, he was convicted in 2001 of statutory rape.  He now lives with his 6-year-old daughter and his parents, who own the home where they all reside.  Shortly before Halloween 2018, two Butts County Sheriff's deputies appeared at McClendon's door to inform him that the Sheriff's Office would be placing a sign in front of the McClendon home. The sign conveyed a "community safety message" from the Sheriff's Office "warning" that there could be no trick-or-treating at the McClendon home.  Upset that the Sheriff's Office was calling his home dangerous and worried about the consequences of that, McClendon voiced his disagreement.  One of the deputies agreed that McClendon should not "be on the sex offender registry," but posted the sign anyway.  McClendon claims his fears were realized; his home was vandalized after the sign was posted, and someone appeared in his neighborhood "looking for me saying that I was a really bad person, a sexual predator." Doc. 48 at 24.

"Sex offender registry" refers to a Georgia statute, O.C.G.A. § 42-1-12, which imposes lifetime restrictions on "sex offenders." Statutory rape is one of many offenses covered by the statute.   Among other things, the statute requires Georgia to classify sex offenders based on a determination whether they pose an increased risk of again committing a sexual offense.  None of the plaintiffs have been so classified.  On the contrary, they have, by all accounts, been rehabilitated and are leading productive lives.

Reed and Holden have similar stories.  Both were previously convicted of sexual offenses and are registered sex offenders.  Docs. 39 ¶ 15-16, 22-23; 40 ¶¶ 15-16, 22-23.  Holden was convicted in 2004 in Florida of lewd and lascivious battery for an

incident that occurred in 2001.  Doc. 39 ¶ 22.  Reed was convicted of sexual assault in 2007 in Illinois.  Doc. 39 ¶ 15.  Reed is a war veteran who works as a truck driver.  Doc. 49 at 8:21-24, 22:4-13, 54:3-55:1.  He lives with his 83-year-old father in his father's home.  *Id.* at 9:5-10:5.  Holden has owned a home in Butts County since May 2017.  He lives by himself and works as a warehouse coordinator.  Doc. 47 at 8:2-21.

This is the sign the Sheriff's Office placed in front of the Plaintiffs' homes:



Docs. 51-3 ¶ 1; 56-1 ¶ 1.  The deputies also tacked to the front doors, or gave to the Plaintiffs, this leaflet:

Halloween Safety sign has been placed in front of your
residence by Order of Sheriff Gary Long. This order is due
to a registered Sex Offender is registered to be living at
this address with the Butts County Sheriff Office.

Ga Code Section 42-1-12 (i) provides as the duty of the
Sheriff Office

 The sheriff's office in each county shall:
    (5)Inform the public of the presence of sexual offenders
in each community


The sign will be placed at location by the Butts County
Sheriff Office on Saturday, October 27, 2018 and removed by
The Butts County Sheriff Office Before Sunday, November 4,
2018.

**THIS SIGN IS PROPERTY OF THE BUTTS COUNTY SHERIFF OFFICE
SHERIFF GARY LONG, IT SHALL NOT BE REMOVED BY ANYONE OTHER
THAN THE BUTTS COUNTY SHERIFF OFFICE.**

Doc. 12-4.  Riley, the officer in charge of the signs, testified she intended to place them

only in the rights-of-way in front of the Plaintiffs' residences.  Docs. 51-1 ¶ 4; 20 at

70:23-71:7.

The Sheriff's Office does not contend that the sign is necessary because of any

indication that the McClendon home, the Reed home, or the Holden home pose a

particular danger to the public.  Rather, the Sheriff's Office placed its "danger" signs in

front of the homes of all sex offenders in the county without regard to any consideration

of whether those offenders posed a particular risk.

Holden found the sign when he returned home from work.  He telephoned

Deputy Riley, whom he understood to be "the enforcement officer," to ask why the sign

had been placed on his lawn without his knowledge or permission.  Doc. 20 at 13:7-14.

Holden told Riley the Sheriff's Office had no right to place the sign in his yard and that

he had removed the sign.  Doc 47 at 16:12-24.  Riley "responded that movement of the

sign or destruction of the sign would be considered destruction of county property and that I could be arrested." *Id.* Holden put the sign back up. *Id.*

Reed first saw the sign in front of his home on a Sunday morning as he and his father were leaving for church. Doc. 49 at 19:8-15, 21:15-22:13. He says he feared for his safety but was concerned more about the safety and health of his elderly father, who was highly agitated. His father called the Sheriff's Office to have something done about the sign. *Id.* at 22:17-23:6. The sign remained.

## II. STANDARD

Under Fed. R. Civ. P. 56(a), a court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists'" and that the movant is entitled to judgment as a matter of law. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)); *Gray v. Manklow (In re Optical Techs., Inc.)*, 246 F.3d 1332, 1334 (11th Cir. 2001). When the movant bears the burden of proof at trial, the movant holds the initial burden to establish there is no genuine dispute concerning whether the elements of the claim or defense have been met. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428,1438 (11th Cir. 1991). In response, the non-movant may defeat summary judgment by producing "significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Id.* at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323

(1986)).  The movant "simply may show . . . that there is an absence of evidence to support the [non-movant]'s case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the [movant] has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

A factual dispute is genuine so as to defeat summary judgment "only if a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224 (quotation marks omitted).  When determining if there is a genuine dispute, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  And "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.*  When both parties have moved for summary judgment, the standard of review does not change.  *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

### III. DISCUSSION

As amended, the complaint asserts three claims: that the Defendants compelled speech from the Plaintiffs in violation of the First Amendment to the United States Constitution, that they trespassed in violation of state law, and that they committed an unlawful taking of the Plaintiffs' property in violation of the Fifth Amendment.  The Court first considers the Defendants' sovereign immunity defenses, then the property claims, then the First Amendment claims.

### A. Sovereign immunity

The Eleventh Amendment protects a state or an arm of the state from being sued in federal court without the state's consent.  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State.  Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.  Sovereign immunity does not bar injunctive relief.  *Ex parte Young*, 209 U.S. 123 (1908).

The Eleventh Circuit has held that sheriffs performing law enforcement functions are arms of the state, and the Plaintiffs do not dispute that the Sheriff in his official capacity (hereafter referred to as the Sheriff's Office to make clear the distinction between the Sheriff's individual and official capacities) was acting as an arm of the state here.  Doc. 56 at 1-2.  The Plaintiffs make two cursory arguments—in the span of three sentences—that the Sheriff's Office should nonetheless be stripped of its immunity.

First, citing a 1949 case and seemingly ignoring all Eleventh Circuit caselaw, the Plaintiffs argue that the Sheriff's Office's briefs strip it of sovereign immunity. Specifically, the Plaintiffs argue that the Sheriff's Office's First Amendment argument that the signs are an exercise of its own speech rights somehow places it in an individual posture rather than an official one, so the Sheriff's Office is liable for damages. *Id.* That novel, devoid-of-authority argument is patently without merit. Second, the Plaintiffs argue that by (allegedly) committing trespass and taking their property, the Sheriff's Office employees acted *ultra vires* and thus lose their immunity. *Id.* at 2. That argument, too, is extremely far-fetched: courts regularly find that sovereign-immunity defenses have merit, even in (the not at all rare) cases where the plaintiff alleges the defendant engaged in unlawful conduct.

Clearly, Eleventh Amendment sovereign immunity bars any First Amendment claims for damages. However, the takings claims are not barred by sovereign immunity. Although the Plaintiffs do not make this argument, sovereign immunity does not apply to takings claims. *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304, 316 n.9 (1987).

The state law official-capacity trespass claims are barred by sovereign immunity absent a valid waiver. GA CONST. Art. I, § 2, Par. 9(e); *Lathrop v. Deal*, 301 Ga. 408, 801 S.E.2d 867 (2017). The Plaintiffs do not contest that, and the Court agrees that the official-capacity trespass claims are barred. *See* Doc. 56 at 19.

**B. Property claims**

*1. The Plaintiffs' property interests*

The three Plaintiffs bring two claims alleging the signs intrude on their property rights.  It is undisputed that neither McClendon nor Reed owns or owned the property where each resided at the times the signs were placed.  Docs. 51-3 ¶¶ 8, 12; 56-1 ¶¶ 8, 12.  The Defendants argue that as a result, neither McClendon nor Reed has "standing to assert any claim that turns on a real property interest." Doc. 51-4 at 30-31.[2]

The Defendants support their contention that a third party who is not a property owner cannot maintain a *trespass* action, and the Court agrees.  *See Coffin v. Barbaree,* 214 Ga. 149, 151, 103 S.E.2d 557 (1958) ("To maintain an action for trespass or injury to realty, it is essential that the plaintiff show either that he was the true owner or was in possession at the time of the trespass.") (quotation marks and citations omitted).  The Plaintiffs accuse the Defendants of "an inaccurate recitation of the law as addressed" and cite contrary 'authority.'  Doc. 56 at 5, 5 n.3.  That authority consists of three cases.  None remotely support their argument.[3]

---

[2] This is a logical enough argument in the context of the trespass and takings claims, but oddly enough, the Defendants summarily state that this point applies to McClendon's and Reed's First Amendment claims, too.  Doc. 51-4 at 8.  But all three Plaintiffs clearly satisfy the requirements for Article III standing on their First Amendment claims, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), and the Defendants point to no authority suggesting otherwise.

[3] In *Pineda v. Warden, Calhoun State Prison*, a prisoner sought habeas relief, claiming trial counsel had erred by not moving to suppress evidence found in an apartment because she believed the defendant-petitioner had lacked standing.  802 F.3d 1198 (11th Cir. 2015).  The case is irrelevant for at least three reasons: first, property ownership and reasonable expectations of privacy do not always coincide.  *See Minnesota v. Olson*, 495 U.S. 91 (1990).  Second, the defendant-petitioner in that case was paying rent and arguably had a possessory interest.  Third, the Eleventh Circuit affirmed the district court's denial of habeas relief in part because it held that the prisoner had likely abandoned his possessory interest in the apartment and, as a result, lacked standing.

In the cited portion of the second case, *United States v. Kittredge*, the old Fifth Circuit reversed the district court's judgment for the Government against an alleged trespasser, concluding that the Government had failed to demonstrate standing to sue for trespass because it was not in a landlord-tenant relationship and that, based on the facts, the Government might be only a licensee "with no

Though the Defendants do not cite authority for their argument that McClendon and Reed lack standing to bring a takings claim, those claims are traditionally limited to landowners. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982) ("We affirm the traditional rule that a permanent physical occupation of property is a taking. In such a case, **the property owner** entertains a historically rooted expectation of compensation, and the character of the invasion is qualitatively more intrusive than perhaps any other category of property regulation. We do not, however, question the equally substantial authority upholding a State's broad power to impose appropriate restrictions upon an **owner's** *use* of his property.") (bolded emphasis added); *see also Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation."). Because they had no ownership interest in the property at issue, McClendon and Reed did not suffer a taking. They cite no authority indicating that a non-owner resident can bring a takings claim.

For those reasons, the Defendants are entitled to summary judgment on McClendon's and Reed's trespass and takings claims. Nonetheless, in an abundance

---

interest or estate in the land[.]" 445 F.2d 1117, 1120 (5th Cir. 1971). Clearly, that case hurts the Plaintiffs' argument more than it helps it.

In the third case, *Shockley v. Garner*, a sublessee of a former owner had sued the new owner for trespass for tearing down a building on the lot. 211 Ga. 271, 271 (1955). The trial court entered a temporary restraining order, but vacated it once it came to light that the former owner had cancelled the primary lessee's lease before selling the property. *Id.* at 272. The trial judge also denied the sublessee's motion for a preliminary injunction. The Georgia Supreme Court affirmed the trial judge's denial of a motion for a preliminary injunction, finding that the sublessee had failed to make a showing of irreparable harm. *Id.* at 271. Perhaps that case provides slight, indirect support for the idea that a dispossessed tenant with an honest, but mistaken, belief he owns the property might conceivably retain some equitable interest in buildings on the land, at least until title is quieted. If so, that does not support the Plaintiffs' argument a bit.

of caution, the Court also addresses the merits of all three Plaintiffs' trespass and takings claims.

*2. Trespass*

Under Georgia law, "[t]respass is a wrongful interference with the right to the exclusive use and benefit of a property right." *Bishop Eddie Long Ministries, Inc. v. Dillard*, 272 Ga. App. 894, 901, 613 S.E.2d 673, 682 (2005) (citing OCGA § 51-9-1).[4] The Plaintiffs argue, perplexingly, that "[t]he facts underlying Petitioners' trespass claims are wholly undisputed by either party[.]" Doc. 50-1 at 29. Among those purportedly undisputed facts, they say, is that "Respondents were entering private property which was closed to the public[.]" *Id.* at 30. But that critical issue is, in fact, hotly disputed: the Defendants claim they placed the signs in the rights-of-way. Doc. 51-1 ¶ 4.[5]

But as critical as that issue is, the parties have all been unable to find evidence establishing the location and extent of the rights-of-way, if any, on the Plaintiffs' properties. Nor have they been able to find legal authority that resolves the relative

---

[4] Confusingly, the Plaintiffs pleaded their trespass claim as a claim brought pursuant to 42 U.S.C. § 1983. But § 1983 is not a vehicle for bringing state law claims. Doc. 39 ¶ 68. The Court can only assume that was a mistake.

[5] The Plaintiffs argue that "the deputies did not place all signs in rights-of-way including placing a sign inside the apartment of a registrant." Doc. 50-1 at 5 (citing Doc. 46 at 24, 29). They say a sign was placed in an apartment window at an address on Brownlee Road. The record does not reveal the occupant of that dwelling, and the Court has trouble seeing the relevance of that fact to the claims of McClendon, Reed, and Holden. *See Singleton v. Wulff*, 428 U.S. 106, 113 (1976) ("Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."). The Plaintiffs have not filed a motion to certify a class or alleged any basis for asserting the rights of third parties. *See id.* at 114-116 (discussing narrow circumstances when a plaintiff may sue for harms to third parties).

rights of the general public, the abutting landowner,[6] and the Sheriff's Office in the rights-of-way.

First, the parties disagree on whether plots of land in Butts County even have rights-of-way.  The Plaintiffs argue that in Butts County, "the right-of-way is the perpendicular distance across the street from property line to property line."  Doc. 50-1 at 32 (citing Doc. 12-9 at 2).  They cite to a PDF, presumably of the Butts County Code, that the Plaintiffs' counsel submitted to the Court.  *Id.*; Doc. 12-9 at 2.  However, the Plaintiffs' brief omits important context for the cited definition, which reads as follows:

> L. *Minimum required street right-of-way width*.  The right-of-way is the perpendicular distance across a street from property line to property line.  Minimum required right-of-way is as follows: . . .

But the "minimum" right of way and the actual right of way are, by definition, not always the same.  The Plaintiffs' conclusion—"So a right-of-way is the street that divides the properties *and nothing more* in Butts County"—flatly ignores the fact that it is relying on the Code's *minimum*.  Doc. 50-1 at 32 (emphasis added).  Nor do the Plaintiffs cite any other law for the definition of a right-of-way.  Although Holden and McClendon testified that signs were placed on their property (Doc. 20 at 13:7-11, 28:21-23), they have not established they knew where the rights-of-way were.[7]

The Defendants make a stronger, but still inconclusive, effort to show where the rights-of-way are at specific Plaintiffs' properties.  As to Holden, they claim that "[r]eal estate records and measurements establish that the government's right-of-way extends

---

[6] Or perhaps just the landowner.  One of several unbriefed issues implicated by the parties' motions is whether the underlying fee of the rights-of-way is vested in the landowner, the public, the County, or some other entity.

[7] The Plaintiffs appear to have a rough idea of where the signs were located, just not whether those locations were in the rights-of-way.  *See* Docs. 49 at 33:7-39:3; 48 at 20:1-12; 47 at 20:7-24:10.

well past the paved roadway and onto the grassy area in front of Mr. Holden's residence." Doc. 51-4 at 2 (citing Docs. 12-13; 12-18; 12-19; 12-20; 51-1 ¶ 6).  The documents cited are: an aerial view of Holden's property with a 49.9-foot line, presumably someone's idea of the right-of-way, marked perpendicular to the road; Holden's deed, which incorporates plats and generically states it is "subject to all . . . rights of way"; two plats; and an affidavit from Deputy Riley saying the sign was placed 15 feet from the center line of the roadway.  None of that evidence establishes where the right-of-way was on Holden's land.  Perhaps the Defendants believe the plats are self-explanatory, but they are not, and it is difficult to see the relevance of Riley's 15-foot line in the absence of any authority establishing that the right-of-way extends 15 feet out from the centerline.[8]

In short, the Plaintiffs have not established that in 2018 the signs were placed outside rights-of-way. [9]  Conversely, the Defendants have not established that they placed the signs within the rights-of-way.  Because there are insufficient facts in the record and insufficient authority in the briefs, the Court cannot adjudicate, as a matter of

---

[8] Though it is not relevant to the disposition of their property claims, the Defendants' attempt to address rights-of-way for the residences of McClendon and Reed similarly fail.  For McClendon, the Defendants claim an 80-foot right-of-way extends past the road.  As evidence, they cite Riley's statement that "40 feet from the centerline is what I go by" (Doc. 20 at 71:23-72:13); a deed, similar to Holden's, incorporating a plat; two copies of a plat that does not show the rights-of-way, or at least not in a way self-evident, and a declaration from Riley testifying the sign placed in the yard of the property where McClendon was living was 20 feet from the roadway centerline.  Doc. 51-4 at 2.  The Defendants' evidence as to Reed is more of the same.

[9] The Plaintiffs also argue that even if the signs were placed in the rights-of-way, the Defendants had no authority to place them there.  Doc. 50-1 at 15-16.  The Court agrees the Defendants have not shown a legal basis for their claim that they can post signs in rights-of-way.  But the Plaintiffs have not established they have any property interest in the rights-of-way.

law, any claims or defenses that depend on identifying whether the signs were placed in rights-of-way and what property rights governed the placement of those signs.[10]

The Defendants also argue that the Plaintiffs' claims are barred by official immunity.  Doc. 51-4 at 29-30.  The Plaintiffs do not respond to that argument.  *See generally* Doc. 56.  "[U]nder the Georgia Constitution, state officials are entitled to official immunity for their discretionary actions unless they acted with 'actual malice' or an 'actual intent to cause injury.'"  *Black v. Wigington*, 811 F.3d 1259, 1265–66 (11th Cir. 2016) (quoting GA. CONST. Art. I, § 2, ¶ IX(d)).  "A discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  *Dukes v. Deaton*, 852 F.3d 1035, 1045 (11th Cir. 2017).  "Actual malice is a demanding standard: it requires an officer to act with a deliberate intention to do a wrongful act."  *Black*, 811 F.3d at 1266.

Here, the deputies were acting within their discretionary authority by placing the signs.  Deputy Riley testified she "was the one who was in charge of making sure that I'm following what we feel the law says we can do in our county."  Doc. 20 at 71:13-15.  Riley was responsible for ensuring the signs were in the rights-of-way and were visible from the road.  *Id.* at 71:16-73:6.  That called for the exercise of discretion.  Again, the Plaintiffs make no argument to the contrary.

Further, nothing in the record suggests the deputies deliberately intended to do a wrongful act.  To the contrary, the undisputed evidence shows they sought legal advice

---

[10] If the Sheriff's Office plans to post signs this Halloween, the parties' inability, after months of investigation, to determine the location of rights-of-way and the relative rights of abutting or underlying landowners and the Sheriff's Office presents some challenges.

before placing the signs and that they attempted to place the signs only in the right-of-way.  No reasonable jury could conclude they acted with actual malice.  The officers are entitled to official immunity.

In sum, sovereign immunity bars the official-capacity trespass claims for injunctive relief[11] and damages, and official immunity bars the individual-capacity trespass claims for damages.  The parties do not address whether official immunity applies to individual-capacity claims for injunctive relief.  However, the complaint does not seek injunctive relief against the officers in their individual capacities.  *See* Doc. 39 at 19.  The trespass claims fail.

### 2. Taking without just compensation

The Fifth Amendment to the United States Constitution provides that "'nor shall private property be taken for public use, without just compensation.'"  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978).  A permanent physical occupation of a plaintiff's property constitutes a taking.  *Loretto*, 458 U.S. at 428.  Further, "even a temporary or intermittent invasion of private property can trigger physical takings liability."  *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 950 (11th Cir. 2018); *see also Banks v. United States*, 138 Fed. Cl. 141, 149 (2018).

The Plaintiffs are not entitled to summary judgment on the takings claims because they have not shown that the signs were placed on their property or, in the alternative, that they have property interests in the rights-of-way.  As to the Defendants' motion, as noted above, the Court agrees that McClendon and Reed lack standing to

---

[11] The Georgia Supreme Court's sovereign immunity jurisprudence for state-law claims differs from federal sovereign immunity law in barring official-capacity suits for injunctive relief.  *Lathrop*, 301 Ga. at 425, 801 S.E.2d at 880 ("Sovereign immunity extends to suits for injunctive relief.") (citing *Georgia Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 603, 755 S.E.2d 184, 192 (2014)).

pursue a takings claim.  As to Holden, the Defendants make three arguments. First,

they argue Holden failed to exhaust state judicial remedies, as formerly required by

*Williamson County Regional Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985).

Doc. 51-4 at 29.  However, after filing the brief, counsel recognized that *Williamson*

*County* was recently overruled and emailed the Court to withdraw that argument.  *See*

*Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019).  Second, they argue that

"the evidence shows the signs were on government right of way."  Doc. 51-4 at 29.  But

as discussed above, the Defendants have not established as a matter of law that the

signs were placed on government rights-of-way.  Third, the Defendants argue, in

cursory fashion, that "temporary, *de minimis* placement of a sign does not support a

'taking' claim."  *Id.*  But the fact a taking is temporary does not *necessarily* defeat a

takings claim.  *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 26 (2012).

Rather, "most takings claims turn on situation-specific factual inquiries."  *Id.* at 32 (citing

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)).  The factors courts

look to include the character of the government action, the economic impact of the

government action, the landowner's "reasonable investment-backed expectations," the

temporal duration of the interference, and the severity of the interference."  *Id.* at 39;

*Penn Central*, 438 U.S. at 124.  The Defendants' brief in support of their motion for

summary judgment does not address any of those factors aside from duration.  *See*

*generally* Doc. 51-4.  The Defendants do address some of those factors in the context

of their brief opposing the Plaintiffs' motion for summary judgment.  Doc. 55 at 33-35.

But the parties waived reply briefs, so the Plaintiffs did not respond to the Defendants'

more detailed takings argument.  Further, their decision not to respond is

understandable, as the Defendants have not expressly relied on those arguments to support their motion for summary judgment.  For those reasons, neither party has demonstrated that it is entitled to judgment as a matter of law on the merits of the takings claim.

The Defendants in their individual capacities also argue they are entitled to qualified immunity for the takings claim for two reasons: (1) they relied on an attorney's advice and (2) their actions did not violate clearly established rights.[12]  As to the first argument, the Defendants point to no Eleventh Circuit caselaw supporting their contention that an official can violate clearly established rights with impunity so long as they can find an attorney who tells them their conduct is lawful.  Courts outside the Circuit have viewed reliance on an attorney's advice as a narrow defense.  *See, e.g.*, *Lawrence v. Reed*, 406 F.3d 1224, 1230-31 (10th Cir. 2005) ("In some cases consultation with an attorney can create the extraordinary circumstances that excuse a violation of clearly established law.  Of course, such consultation is not inherently extraordinary, for few things in government are more common than the receipt of legal advice.") (citations omitted).  Certainly, the receipt of legal advice, by itself, does not excuse a violation of clearly established rights.  Accordingly, the Court turns to the Defendants' second argument.

---

[12] It is doubtful whether a takings claim, which seeks just compensation for land taken by the government for a public purpose, can be brought against an individual defendant in his individual capacity.  *See Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) ("[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities."); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 687 (1978) ("[I]t beggars reason to suppose that Congress would have exempted municipalities from suit, insisting instead that compensation for a taking come from an officer in his individual capacity rather than from the government unit that had the benefit of the property taken.").  However, the Eleventh Circuit has left open the possibility that individual defendants in their individual capacities can be liable for takings claims.  *See Spencer v. Benison*, 2018 WL 4896389, at *7 (N.D. Ala. Oct. 9, 2018) (citing cases).

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  A plaintiff can show a right is clearly established in three ways: first, by pointing to "relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law."  *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018).  Second, a plaintiff "can identify a broader, clearly established principle that should govern the novel facts of the situation." *Id*.  Third, the plaintiff "can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary."  *Id*. at 1259-1260.

The Plaintiffs argue that "[i]t is clearly established that physical takings of property for government use, even if temporary, 'qualify as a taking.'  *Arkansas Game & Fish Com'n v. United States*, 568 U.S. 23, 26 (2012)."  Doc. 56 at 3.  That is their only argument, and it is insufficient.  Although it quotes (out of context) the first page of the opinion, the Plaintiffs' brief misstates the holding of *Arkansas Game & Fish*.  "The first rule of case law as well as statutory interpretation is: Read on."  *Ark. Game & Fish Comm'n v. United States*, 568 U.S. at 36.  Throughout the opinion, the Court makes clear that its holding only recognizes the possibility of a takings claim based on a temporary occupation and that its holding is limited to flooding.  *See, e.g.*, *id*. at 38 ("We rule today, *simply and only*, that *government-induced flooding* temporary in duration gains no *automatic* exemption from Takings Clause inspection.") (emphasis added).  There is no clearly established law that every temporary physical invasion of property constitutes a taking.  Further, if even the parties' counsel have not yet found law

establishing the location of the rights-of-way and the relative rights of the parties in the rights-of-way, certainly a reasonable officer would not have known the placement of the signs interfered with the Plaintiffs' property interests.  And again, the officers have adduced undisputed evidence that they at least attempted to place the signs in what they believed was the right-of-way.  Docs. 51-1 ¶ 4; 20 at 70:23-71:7.  They are entitled to qualified immunity on the takings claim.

In sum, the Defendants are entitled to summary judgment on the trespass claims and on McClendon's and Reed's takings claims.  As to Holden's takings claims, the Defendants in their individual capacities are entitled to summary judgment on qualified immunity grounds.  As to the merits of Holden's remaining official-capacity takings claim for the 2018 sign posting, neither party has shown it is entitled to judgment as a matter of law.  However, the Fifth Amendment provides for "just compensation" after a taking for public use has occurred—not for injunctive relief.  The Plaintiffs make no argument that the signs were not placed for a public purpose, so the only issues are (1) whether a taking has occurred and (2) if so, the amount of just compensation due.  *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167-68, 2179 (2019) ("A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it.  That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities. . . . As long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed.").

**C. Compelled speech**

The Plaintiffs also allege the Defendants' actions violate their First Amendment rights to be free from compelled speech.

The First Amendment "forbids abridgement of the freedom of speech," and "freedom of speech includes both the right to speak freely and the right to refrain from speaking at all." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018) (quotation marks and citations omitted). "A system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster such concepts." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Even when speech is purely factual with no ideological implications, it is still speech protected by the First Amendment, and the compelled speech doctrine applies. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 797-98 (1988) (holding that "cases cannot be distinguished simply because they involve[] compelled statements of opinion while here we deal with compelled statements of 'fact': either form of compulsion burdens protected speech").

On October 29, 2019, the Court granted the Plaintiffs' emergency motion for a preliminary injunction prohibiting the Defendants from placing the signs in the named Plaintiffs' yards during Halloween of that year. Doc. 17. The Court found, based on the evidence then before the Court, that the Plaintiffs were likely to succeed on the merits of their compelled speech claim. *Id.* at 12-18. In their briefing, the parties disagreed—and continue to disagree—on the applicable law.

The Plaintiffs argued that they can prevail on a compelled speech claim if they show "(1) speech; (2) to which the plaintiff objects; (3) that is compelled; and (4) that is

readily associated with the plaintiff."  Doc. 6 at 8; *Doe 1 v. Marshall*, 367 F. Supp. 3d

1310, 1324 (M.D. Ala. 2019) (citing *Cressman v. Thompson*, 798 F.3d 938, 949-951

(10th Cir. 2015)).  Under that framework, the Plaintiffs argued, "[i]t is self-evident that

the signs identifying Petitioners as registered sex offenders are 'readily associated' with

them[.]"  Doc. 6 at 8-9.

The Defendants argued that the element of "association" should be defined more

narrowly.  Doc. 15 at 10.  They argued that association by itself is not enough; rather,

the inquiry is whether the plaintiff is associated with the speech in a way that suggests

he endorses it.  *Id.* (citing *Cressman*, 798 F.3d at 949).  Under that standard, the

Defendants argued, the Plaintiffs' claims fail because "nobody can get the impression

that a Plaintiff endorses the message on the sign."  *Id.* at 11.

Although the Court did not then completely resolve that disagreement, it found

that several circumstances suggested the Plaintiffs had a strong likelihood of prevailing

on the merits: front yards are a traditional forum for residents' speech, and display of a

yard sign typically conveys the resident's approval, endorsement, or acquiescence in a

message.  Doc. 17 at 15-16.  Finally, and critically, the evidence adduced at the

preliminary injunction hearing suggested that the Plaintiffs were "forbidden by the

Defendants from placing a competing message and [were] not free to disassociate

themselves from those views."  *Id.* at 17 (quotation marks and citation omitted).  The

Defendants' argument that no one could get the impression the Plaintiffs endorsed the

signs was substantially undercut by their prohibiting the Plaintiffs from using their

property to disclaim the signs' message.

Now, the record is more developed, and there is evidence that the Sheriff's Office does not now have a policy of prohibiting or the intention to prohibit competing speech. The Plaintiffs dispute this, citing the Sheriff's testimony at the preliminary injunction hearing before last Halloween.  Doc. 56-1 ¶ 44 (citing Doc. 20 at 44).  They cite no further evidence showing such a policy or intention.

On the issue of injunctive relief, the initial question, then, is whether the record provides evidence that the Sheriff's Office intends to bar the plaintiffs from placing competing messages.  It does not.  Whatever the Sheriff's Office planned to do in 2019, it is clear now it will not attempt to impinge the Plaintiffs' First Amendment rights.  The Plaintiffs are free to offer speech competing with the Sheriff's Office's views and to disassociate themselves from those views.

That matters to the question of endorsement, which, the Court finds, is the appropriate question for determining whether, if the signs are posted this Halloween, the speech will be readily associated with the Plaintiffs.[13]  It is well established that the government cannot force people to endorse or appear to endorse a point of view: courts have struck down requirements that students salute the flag or recite the Pledge of Allegiance.  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004).  The Court finds there is now no risk of endorsement here, for several reasons.  First, the sign clearly identifies the source of the message: "A COMMUNITY SAFETY MESSAGE FROM **BUTTS COUNTY SHERIFF GARY LONG**."  Docs. 51-3 ¶ 1; 56-1 ¶ 1.  Second, no reasonable

---

[13] The Defendants also argue the Sheriff may exercise his speech rights on public rights-of-way, and the signs are protected expression.  Doc. 51-4 at 9-12.  Similarly, the Sheriff argues that the Plaintiffs have no right to exclude speech in rights-of-way.  *Id.* at 8.  But again, the Sheriff failed to show the signs were placed in rights-of-way.

observer could now conclude the resident agreed with the sign's message: that trick-or-treating at their residence was dangerous. Again, the Plaintiffs are now free to disagree with that message by posting competing messages. No reasonable jury could find that there is a risk the Plaintiffs will appear to endorse the signs' message.

After briefs and responses were filed, the Plaintiffs emailed the Court a letter brief and a recent decision of the Louisiana Supreme Court. The Plaintiffs cited this case "in response to" the Defendants' compelled-speech argument (discussed *infra*, n.14) and their argument "that third parties viewing the signs displayed in front of Appellees' homes would be 'unlikely to conclude that [they] endorse[] the message.'" Letter Brief at 1. In that case, the Louisiana Supreme Court affirmed the district court's ruling "quashing the prosecution of defendant for altering his identification card to conceal the 'SEX OFFENDER' designation" on the grounds that the designation compelled speech in violation of the First Amendment. *State of Louisiana v. Hill*, No. 2020-KA-0323 (La. Oct. 20, 2020). The court in that case concluded that "an identification card is personalized to such an extent that it is readily associated with the bearer." *Id.* at *11. But the signs in this case, unlike driver's licenses, clearly state that the speaker is the government. Further, the statute in that case prohibiting alterations of a driver's license made it practically impossible for the criminal defendant to disassociate from the message or disclaim the message without facing prosecution. At the preliminary injunction stage, of course, the Sheriff's testimony suggested the same was true in this case. But again, it has now become clear the plaintiffs are free to disassociate themselves or place competing messages.[14]

---

[14] Similarly, the statute at issue in *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1321 (M.D. Ala. 2019), a case finding that a driver's-license branding requirement for sex offenders unconstitutionally compelled

The question of whether a compelled speech claim is viable in the absence of an appearance of endorsement is a more difficult one.  Perhaps surprisingly, the Plaintiffs provide no authority supporting their argument that "The Law Requires Association, Not Endorsement."  Doc. 56 at 11.  Rather, they admit that "it may be rare to find a compelled speech case where the message is 'associated with' a citizen without it being perceived as endorsed by them."  *Id.* at 12.  Still, the Plaintiffs attempt an argument as follows:

First, they cite *Cressman v. Thompson*, 798 F.3d 938, 948(III)(B) (10th Cir. 2015), for the principle that the proper test is "readily associated," not endorsement. Doc. 56 at 11.  But *Cressman* itself clearly used an endorsement test.  798 F.3d at 949 ("because Mr. Cressman is closely linked with the expression in a way that makes him appear to *endorse* the government's message, we concluded in *Cressman I* that his individual First Amendment rights were implicated.") (quotation marks omitted) (emphasis in original).  Perhaps recognizing this, the Plaintiffs then attempt to distinguish *Cressman*, arguing that "[t]he Tenth Circuit's analysis is therefore irrelevant to this case beyond its recitation of the basic test for compelled speech about which the parties generally agree."  Doc. 56 at 12.  But as the Tenth Circuit clearly explained in the quote cited above, their "basic test for compelled speech"—which, incidentally, the parties do not agree on[15]—requires that the plaintiff make a showing of endorsement. That argument fails.

---

speech, made failure to comply a felony.  Again, in that case, there was no practical way for a plaintiff to disassociate from or disclaim the speech at issue.

[15] *See, e.g.*, Doc. 56 at 11 (arguing the Defendants' view of the compelled speech test is wrong).

The Plaintiffs also cite Justice Thomas's concurrence from *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 568 (2005).  The Plaintiffs' complete analysis of that concurrence is reproduced below:

> As Justice Thomas wrote, "[t]he government may not, consistent with the First Amendment, associate individuals or organizations involuntarily with speech by attributing an unwanted message to them." *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 568, 125 S.Ct. 2055, 161 L.Ed.2d 896 (2005) (Thomas, J. concurring).

Doc. 56 at 11.  That passage does not support the Plaintiffs' position.  The Court has difficulty seeing the difference between a government "attributing" a message to a plaintiff and a government taking an action that makes it appear as if a plaintiff endorses the government's point of view, and the Plaintiffs certainly do not try to explain how the concurrence's "attribut[ion]" language helps their case.  If anything, "attribution" would be a less plaintiff-friendly test in this case, as it is clear that the message is attributed to only one person: "**BUTTS COUNTY SHERIFF GARY LONG**."  Docs. 51-3 ¶ 1; 56-1 ¶ 1.

Apart from the Plaintiffs' complete lack of support for their argument, the Court also finds the endorsement test is supported by caselaw.  The Court in *Wooley v. Maynard*, a decision in a suit to enjoin prosecution under a New Hampshire law prohibiting crossing out the state motto on the license plate, did not discuss the issue of endorsement, but the dissent and subsequent courts have interpreted it as applying an endorsement test.  430 U.S. 705 (1977); *Id.* at 722 (Rehnquist, J., dissenting) (disagreeing with the majority opinion's "fiction that appellees are unconstitutionally forced to *affirm*, or *profess belief in*, the state motto.") (emphasis added); *Cressman v. Thompson*, 719 F.3d 1139, 1157 (10th Cir. 2013) ("*Cressman I*") ("The relevant question is whether [the plaintiff] is 'closely linked with the expression in a way that makes [him] appear to endorse the government message.'  *Wooley* answers that

question.") (citing *Johanns,* 544 U.S. at 565 n.8) (holding that the plaintiff stated a claim for compelled speech regarding a license plate image he found pantheistic).

In *Johanns v. Livestock Marketing Ass'n*, the Supreme Court rejected a facial compelled speech challenge to the Secretary of Agriculture's "Beef Promotion and Research Order," which taxed beef sales to fund promotional marketing.  544 U.S. at 553, 567.  The Court reversed the district court and appellate court's conclusion that the Order unconstitutionally compelled speech, holding that "[s]ince neither the Beef Act nor the Beef Order requires attribution, neither can be the cause of any possible First Amendment harm."  *Id.* at 564-66.  The Court recognized that an as-applied challenge *may* be viable "if it were established . . . that individual beef advertisements were attributed to respondents."  *Id.* at 565.  In a footnote, the Court elaborated, noting that "there might be a valid objection if those singled out to pay the tax are *closely linked with the expression in a way that makes them appear to endorse the government message.*"  *Id.* at 565 n.8 (emphasis added) (citations omitted).

Whether the test is formulated as one of appearance of endorsement or one of attribution, no reasonable observer could conclude the Plaintiffs appear to endorse the signs.  Accordingly, the merits of the claim favor the Defendants.[16]

---

[16] To be clear, the Court does not accept the Defendants' argument that government speech is always immune to First Amendment challenge.  Doc. 51-4 at 9.  Certainly, the government is free to express its message, and private citizens ordinarily have no First Amendment right to control that message.  But even the Defendants admit that "government speech can also be compelled speech" in certain circumstances.  The relevant question, which the compelled speech analysis resolves, is whether those circumstances are present here.  *Id.* at 10.  Similarly, the Court does not accept the Defendants' argument that the First Amendment protects their right to post the signs as an exercise of free speech. *Id.* at 10-11.  Without addressing the legal merits of that argument, the Court notes the argument is premised on the Defendants' contention the signs were posted in rights-of-way, a contention which, again, the Defendants have not established as a matter of law.

Further, at the very least, it is clear the Defendants violated no clearly established rights. The Plaintiffs argue that *Doe 1 v. Marshall*, 367 F.Supp.3d 1310, 1324(IV)(A)(1)(a) (M.D. Ala. 2019), provides "case law with indistinguishable facts clearly establishing the constitutional right." Doc. 56 at 3-4 (citing *Shuford v. Conway*, 666 F. Appx. 811, 817(II)(A)(ii) (11th Cir. 2016)). But the facts of *Doe 1*, which involved sex offender branding on driver's licenses, are markedly different, and, more to the point, district court decisions do not clearly establish the law for purposes of qualified immunity. *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d at 1259 ("There are various ways to evaluate whether a right is clearly established . . . the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court.").[17] Second, the Plaintiffs argue that "citizens have the right not to display messages by the government with which they disagree, under the First Amendment." Doc. 56 at 3-4 (citing *Wooley v. Maynard*, 430 U.S. at 714 (1977)). However, as noted above, *Wooley*'s application to the facts here is far from clear. Again, *Wooley* held that a prosecution for covering up the state's message on one's license plate violated the First Amendment. But the dissent and later courts interpreted *Wooley* as applying an endorsement test, and there is no risk of an appearance of attribution or endorsement here. Further, as the Supreme Court noted in *Johanns v. Livestock Marketing Ass'n*, the compelled speech inquiry closely depends on the facts of an individual case. 544 U.S. at 564-66. Nothing from *Wooley* or other precedent would have apprised the Defendants that placing the signs violated the Plaintiffs' rights to be free from compelled

---

[17] Incidentally, the order the Plaintiffs cite from *Doe 1* granted the defendants' motion to dismiss the individual-capacity claims as barred by qualified immunity.

speech.  In other words, the Plaintiffs have not pointed to any cases showing that "existing precedent [has] placed the . . . constitutional question beyond debate." *Patel v. Lanier Cty. Ga.*, 969 F.3d 1173, 1186 (11th Cir. 2020) (quoting *JW ex rel. Williams*, 904 F.3d at 1259-1260).  Accordingly, the Defendants are entitled to qualified immunity on the compelled speech claims.

## IV. CONCLUSION

The Court first makes clear what it is not concluding.  The Sheriff's Office believes it has the right to post the signs in front of the Plaintiffs' homes as long as the signs are in yet to be defined rights-of-way *and* that it can prosecute anyone who moves the signs.  The Court doesn't reach that issue, but as noted, the Defendants have scant authority to support either proposition.  And the Court certainly doesn't conclude, given the facts here, that putting the signs in the Plaintiffs' yards makes sense.  Rather, the Court only concludes that, for the most part, the relief the Plaintiffs seek is not available.

Accordingly, for the reasons stated, the Plaintiffs' motion for summary judgment (Doc. 50) and equitable relief (Doc. 50-1) are **DENIED**, and the Defendants' motion for summary judgment (Doc. 51) is **GRANTED in part** and **DENIED in part**.  The Plaintiffs' trespass claims are **DISMISSED** with prejudice for lack of standing (for McClendon's and Reed's claims), as barred by sovereign immunity (for all official-capacity claims), and as barred by official immunity (for the individual-capacity claims).

The Plaintiffs' takings claims against the individual Defendants are **DISMISSED** with prejudice as barred by qualified immunity.  Plaintiffs McClendon's and Reed's takings claims are **DISMISSED** with prejudice for lack of standing.

The Plaintiffs' compelled speech claims for injunctive relief are **DISMISSED** without prejudice, and their damages claims for the 2018 signs are **DISMISSED** with prejudice as barred by qualified immunity.

The only remaining claim is Holden's takings claim against the Sheriff's Office for damages.

Based on these conclusions, the Plaintiffs' request for preliminary injunctive relief is **DENIED**.

**SO ORDERED**, this 27th day of October, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT