**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER REED, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:19-cv-385 (MTT)** |
| | ) | |
| **GARY LONG, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Plaintiffs Reginald Holden, Corey McClendon, and Christopher Reed have moved for an award of attorneys' fees as prevailing parties pursuant to 42 U.S.C. § 1988.  Doc. 91.  For the following reasons, that motion (Doc. 91) is **GRANTED in part**.

### I. BACKGROUND

On September 24, 2019, the plaintiffs, individuals on Georgia's sex offender registry, filed suit against defendants Butts County Sheriff Gary Long and Deputy Jeanette Riley for, among other things, the defendants' alleged violations of the plaintiffs' First Amendment rights.  Doc. 1.  The claims were based on the Butts County Sherriff's Office policy of placing signs warning children against trick-or-treating in the yard of every Butts County registered sex offender.  Doc. 73 at 4-5.  The plaintiffs moved for a preliminary injunction, which the Court granted in part on October 29, 2019. Docs. 6; 17.  The Court later denied the plaintiffs' motion for summary judgment and permanent injunction, and granted the defendants' motion for summary judgment on December 10, 2020.  Doc. 62.  The plaintiffs appealed, and the Eleventh Circuit

reversed the grant of summary judgment as to Holden, and vacated and remanded the case after finding that the defendants' actions violated Holden's First Amendment rights. Docs. 73; 74. Accordingly, on August 8, 2022, the Court entered judgment in favor of Holden on his First Amendment claim and permanently enjoined Long "from requiring Holden to display a sign on his front yard relating to his registered sex offender status." Docs. 83; 84. On August 15, 2022, McClendon and Reed stipulated the dismissal of their claims. Doc. 89.

On August 22, 2022, Holden, McClendon, and Reed moved for the recovery of attorneys' fees against the defendants. Doc. 91. At the plaintiffs' request, the Court held an evidentiary hearing on December 1, 2022. Docs. 99 at 10; 100. Plaintiffs request $486,333.75 in attorneys' fees.[1] Doc. 101-1.

## II. STANDARD

In a proceeding under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation and internal quotation marks omitted).

---

[1] This total reflects the plaintiffs' requested hours at their requested $665 hourly rate. Docs. 101-1 at 3-4; 91 at 14.

"Courts are considered experts on the reasonableness of the number of hours expended and the hourly rates requested. Indeed, a district court may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[2] *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1090 (11th Cir. 2022) (internal quotation marks and citations omitted).

### III. DISCUSSION

The Court finds that Holden is entitled to an award of $298,530 in attorneys' fees against the defendants.[3]

## A. Holden is a Prevailing Party.

"It is well-settled that a plaintiff is a prevailing party and thus ordinarily entitled to a fee award of 'some kind' if the plaintiff has succeeded on 'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Church of Scientology Flag Serv., Org., Inc., v. City of Clearwater*, 2 F.3d 1509, 1513 (11th Cir. 1993) (quoting *Hensley*, 461 U.S. at 433). "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Thus, "[t]he touchstone of the prevailing party inquiry must be the material

---

[2] At the evidentiary hearing, the Court put in the record its experience in this regard. *See* Doc. 103.

[3] The defendants make a meritless argument, one of several, that the Eleventh Amendment bars an award of attorneys' fees under § 1988. Doc. 97 at 3-7. That is simply untrue. *See Hutto v. Finney*, 437 U.S. 678 (1978); *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 279 (1989) ("After *Hutto* … it must be accepted as settled that an award of attorney's fees [under § 1988] ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment.").

alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.  Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*."  *Id*. at 792-793.

Here, it cannot be reasonably disputed, although the defendants do, that Holden is a prevailing party.  The Court entered a permanent injunction against the defendants in Holden's favor—materially altering the legal relationship between Holden and the defendants by permanently preventing certain behavior by Long against Holden.  Doc. 84.  The defendants' assertion that Holden obtained a "symbolic injunction" is without merit.  Doc. 97 at 9-11.  Although Reed and McClendon did not prevail, that does not affect the Court's analysis.  Whether representing only Holden or all three plaintiffs, the Court finds that plaintiffs' counsel would have performed the same work.

**B. Reasonable Hourly Rate.**

The plaintiffs request an hourly rate of $665—$500 with a 1.33 upward enhancement.  Doc. 91 at 3, 14.  For the following reasons, the Court finds $500, with no upward enhancement, to be a reasonable hourly rate under the lodestar analysis.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."  *Id*.  "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence."  *Id*.  The relevant legal community can be the

community where the suit was tried, but where attorneys are unwilling or unable to represent the plaintiff, the relevant legal community can be non-local.  *See Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (holding it was not erroneous for the district court to find Atlanta as the relevant legal community in a voting rights case).

      *1. The Relevant Legal Community is Atlanta.*

      The subject matter of this case—representing registered sex offenders against a sheriff—was not one likely to attract legal representation, particularly experienced lawyers willing to take the risk and the heat of representing unpopular clients with doubtful prospects of success.  Based on the Court's experience, it would have been difficult to find a team of attorneys in Macon to represent these plaintiffs on this issue. Apart from expertise in § 1983 litigation, which relatively few plaintiffs' personal injury attorneys have, the plaintiffs needed counsel familiar with sex offender laws.  For a practical illustration of why competent counsel would be reluctant to take this case, consider the threats received by Mr. Yurachek.  Doc. 101-5.  One individual messaged Mr. Yurachek on Facebook stating, "Please go take your own life."  *Id*. at 3.  Another individual emailed Mr. Yurachek "shame on you piece of shit.  I hope you have kids and they all get raped and see if you will still want the ones who raped your kids to pass out candy to your kids every Halloween.  Shame on you.  Hope this message curses you and your family."  *Id*. at 1.  Accordingly, the Court finds Atlanta the relevant legal market, and any time billed for travel is therefore reasonable.

*2. $500 is a Reasonable Hourly Rate.*

"Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. "It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id*. "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id*. The plaintiffs submitted affidavits that establish $500 is a reasonable hourly rate. Docs. 91-5; 91-8.

Mr. Yurachek, an Atlanta attorney, testified that, when applicable, he charges a $500 hourly rate, and believes that "[c]ompensation at the rate of $500.00 per hour for [him] … is a conservative rate for complex federal litigation in metropolitan areas within the Eleventh Circuit and is a reasonable lodestar hourly rate based on prevailing market rates in Georgia." Doc. 91-1 ¶¶ 21, 23. Mr. Begnaud testified he charges $450 an hour when working non-contingency cases. Doc. 91-5 ¶¶ 19-20. He further stated that "contingency work justifies at least a $500 hourly rate." *Id*. ¶ 22. Moreover, Bruce Harvey, who has worked with experienced § 1983 Georgia litigators, testified by affidavit that his "observation has been that attorneys in Georgia who litigate Section 1983 claims on the plaintiff's side, with over ten years' experience, would charge at least $500 per hour." Doc. 91-3 ¶¶ 7, 10.

Of particular importance is the declaration of Janice Belucci—the "Executive Director of the Alliance for Constitutional Sex Offense Laws (ACSOL)." Doc. 91-4 ¶ 6. ACSOL is "a national non-profit organization dedicated to protecting the Constitution by

restoring the civil rights of people listed required to register as a sex offender … which closely tracks litigation concerning sex offender laws throughout the country." *Id*. Belucci has "been involved in more than 100 cases challenging aspects of local government [and] state and federal sex offender registration laws throughout the country." *Id*. ¶ 7.  Her experience includes a California federal district case which also focused on the posting of signs on registered sex offenders' properties on Halloween. *Id*. ¶ 8.  Based on her familiarity with cases of this type and the rates charged by attorneys who litigate those cases, she opines that "an hourly rate of $500.00 for counsel is reasonable and on par with rates charged by attorneys of like reputation, skill, and experience throughout the country."  *Id*. ¶¶ 13-14.

Furthermore, the experience and reputation of counsel is significant.  Mr. Yurachek has worked in § 1983 cases since he began practicing law over twenty years ago.  Doc. 91-1 ¶ 9.  He has handled numerous cases at the trial and appellate level, including "a number of cases involving sex offender registries and issues related thereto."  *Id*. ¶¶ 13, 16-17.  Harvey, also an experienced appellate attorney, testified that "Mr. Yurachek has a reputation as one of the best criminal attorneys practicing in Georgia, particularly with regard to … issues related to sex offenders," and that "Mr. Yurachek is one of the most—if not the most—knowledgeable attorneys in the State of Georgia concerning the Registry."  Doc. 91-3 ¶¶ 9, 11.  Since 2014, Mr. Begnaud has "litigated or [is] litigating over 50 civil rights cases in Georgia federal courts."  Doc. 91-5 ¶ 17.  His law firm "focuses on civil litigation—primarily governmental liability, personal injury, and appellate work."  *Id*. ¶ 14.

The Court finds $500 to be a reasonable hourly rate.

*3. No Upward Enhancement is Warranted.*

The plaintiffs believe the *Johnson* factors warrant a 1.33 upward enhancement to bring the hourly rate to $665.  Doc. 91 at 3, 14.  The Court disagrees.

The *Johnson* factors are twelve factors a court considers in determining the reasonableness of a lodestar: (1) the time and labor required, (2) the novelty and difficulty of the case, (3) the skill required to perform the legal service properly, (4) the opportunity cost of the attorney's inability to work on other cases as a result of accepting this one, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of money at issue and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) attorneys' fee awards in similar cases.  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)[4], *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  However, "[t]he Supreme Court has made it plain that 'most, if not all,' of the [*Johnson*] factors used to determine a reasonable fee are already subsumed in the lodestar, and it is not permissible to enhance a fee based on a factor that is subsumed."  *In re The Home Depot Inc.*, 931 F.3d 1065, 1082-83 (11th Cir. 2019) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552-53 (2019)).  "That would be 'double counting'—i.e., a windfall."  *Id.* (quoting *City of Burlington v. Dague*, 505 U.S. 557, 563 (1992)).  "Rare" and "exceptional" circumstances must exist as to render the lodestar fee inadequate and warrant an enhancement.  *Perdue*, 559 U.S. at 554.

---

[4] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Here, there are not "rare" and "exceptional" circumstances that the Court has not already taken into account. *Id*. The plaintiffs point to the complexity, results, risk, contingency, and undesirability factors. Doc. 91 at 12-14. But complexity, results, and risk are subsumed in the lodestar. *See Home Depot*, 931 F.3d at 1082-84. Complexity can only enhance the award "where the fee applicant demonstrates that the 'superior attorney performance is not adequately taken into account in the lodestar calculation.'" *Id*. (quoting *Perdue*, 559 U.S. at 554). The plaintiffs have not done so. In particular, the Court has considered the undesirability and contingency factors in determining the lodestar rate. Thus, no upward enhancement is warranted.

**C. Reasonable Number of Hours.**

For the following reasons, the Court finds counsel reasonably expended 592.965 hours litigating this case.

*1. Defendants' Overarching Arguments.*

In determining the lodestar, the Court should exclude "hours that were not reasonably expended," such as hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (internal quotation marks and citation omitted). Except as stated below, the Court does not find that any hours claimed by counsel are excessive, redundant, or unnecessary. Apart from its detailed examination, the Court holistically considered the novelty and complexity of the case in determining the reasonable number of hours. The nature and depth of the case—"three years of fierce litigation, including the issuance of a preliminary injunction to Petitioners, the granting of summary judgment to Defendants, the appeal of the injunction decision and the ultimate

decision by the Eleventh Circuit"—warrants a recovery for almost 600 hours.  Doc. 91 at 1.

The plaintiffs request recovery for 728.25 hours—524.1 for Mr. Yurachek and 204.15 for Mr. Begnaud.  Doc. 101-1 at 3-4.  The defendants nitpick nearly every hour.[5]

First, the defendants argue that the plaintiffs did not carry their burden to show time entries were not duplicative, that is, to demonstrate that Mr. Yurachek and Mr. Begnaud did not spend time doing the same work.  Doc. 97 at 18-19.  "[A] fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation."  *Am. Civ. Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999).  Counsel's timesheets show that the plaintiffs have carried this burden—the entries are distinct from one another, and where there is overlap, the Court finds that the overlap is customary.  Docs. 101-2; 101-3.  Moreover, counsel, in another generous concession, revised their original entries and put communication between the two attorneys only in Mr. Begnaud's entries. Docs. 101-2; 101-3.

Second, the defendants ask the Court to deduct "vague" and "block billing" entries.  Doc. 97 at 19.  The defendants assert "Plaintiffs' billing entries are almost all so vague that there is no telling what was done," and that counsel committed a "sin" by "block billing."  *Id*.  The Court does not find that counsel's entries are "so vague" to

---

[5] Initially, the plaintiffs requested recovery for 1,043.6 hours.  Doc. 101-1 at 3-4.  After receiving the defendants' response, counsel voluntarily reduced those hours by 315.35.  *Id*.  Counsel's concessions were in part generous, perhaps to a fault.  *Id*. at 1-2.  As one small example, they reduced 0.10 entries to 0.05, even though no one, except the defendants in their brief, disputes that lawyers reasonably bill time in increments of six minutes.  Doc. 97 at 22-24.  That includes defense counsel.  The Court, in accordance with its usual practice in these matters, instructed opposing counsel to file *their* billing statements for *in camera* inspection.  Invariably, that narrows the issues.

require deductions.  *Id*.  On the contrary, unlike the defendants, the Court had no difficulty "telling what was done."  *Id*.

Third, the defendants argue that many entries are excessive.  Doc. 97 at 20-21. In response to the defendants' claim of "excessiveness," counsel made reductions across the board to their original entries, reducing the hours by 315.35.  Docs. 101-1; 101-2; 101-3.  The Court cannot, and thus does not, find that the requested 728.25 hours are "excessive" for a case that involved a complex constitutional issue, multiple hearings, arduous summary judgment briefing, and a successful appeal.  Finally, any issue the defendants take with counsel's 0.10 entries is moot, as counsel changed all 0.10 entries to 0.05.  Docs. 101-2; 101-3.

*2. Time Spent on Client Recruitment.*

The Court finds that Holden is not entitled to recover for time spent on client recruitment.  Pursuant to *Barnes*, a district court must exclude from recovery "hours spent looking for and solicitating potential plaintiffs."  168 F.3d at 435 ("[T]ime spent procuring potential plaintiffs is obviously not expended on the litigation because until the attorney has a client, there is no case to litigate.").  Accordingly, the Court deducts the 11.5 hours related to client recruitment.  Docs. 101-1 at 3-4; 101-2 at 1-3; 101-3 at 1.

*3. Appeals.*

The defendants argued against recovery for time spent on the first appeal, and counsel voluntarily revised their time to exclude it.  Docs. 97 at 26-27; 101-1 at 2.  But the defendants also argue that recovery is unavailable for time spent on the second appeal because, pursuant to the Federal Rules of Appellate Procedure, "Plaintiffs must bear their own appellate fees."  Doc. 97 at 27-28.  This assertion is an egregiously

incomplete statement of the applicable rules; Eleventh Circuit Rule 39-2(e) provides,

"[w]hen a reversal on appeal, in whole or in part, results in a remand to the district court

for … further proceedings (e.g., reversal of order granting summary judgment …), a

party who may be eligible for attorney's fees on appeal after prevailing on the merits

upon remand may … request attorney's fees for the appeal in a timely application filed

with the district court upon disposition of the matter on remand."  The Court makes no

deduction for time spent on the second appeal.

    *4. Time Spent on Amicus Briefs.*

    Holden is not entitled to recover for counsel's time spent reviewing amicus briefs

in the second appeal.  "The district court should not award plaintiffs any attorney's fees

or expenses for work done in connection with supporting amicus briefs.  (A reasonable

amount of time spent reading and responding to opposing amicus briefs is, of course,

compensable.)."  *Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003).  Here, there

were only supporting amicus briefs.  Therefore, the Court deducts 1.4 hours for the time

Mr. Yurachek spent reviewing supporting amicus briefs.  Doc. 101-2 at 36-37.

    *5. Time Claimed for Work after the Defendants' Rule 68 Offer.*

    Under Federal Rule of Civil Procedure 68(a), "a party defending against a claim

may serve on an opposing party an offer to allow judgment on specific terms, with the

costs accrued."  If the opposing party declines the offer, and "[i]f the judgment that the

[opposing party] finally obtains is not more favorable than the unaccepted offer," then

"the [opposing party] must pay the costs incurred after the offer was made."  Fed. R.

Civ. P. 68(d).

As clarified at the evidentiary hearing, the plaintiffs received the defendants' Rule 68 offer on the morning of August 5, 2022, shortly before the hearing on the defendants' motion to dismiss for lack of jurisdiction. *See* Docs. 75; 85; 99 at 8. The defendants claim that they served the Rule 68 offer on July 11, 2022. Doc. 97 at 29. However, the defendants served the offer by certified mail to Mr. Yurachek's old address. Doc. 97-6 at 3 (address as 55 Ivan Allen Blvd.). Mr. Yurachek had moved offices and was then located at 1344 La France Street NE, as indicated by his most recent filing at that time, as well as on the docket. *See* Docs. 78; 99 at 8-9. And under the Court's Local Rules, "[s]ervice of … papers … required by these rules shall be deemed to have been made if such paper or notice is addressed to the attorney at the address *shown on the role of attorneys admitted to practice before this Court*; or to counsel or the respondent's attorney *at the address indicated in the most recent pleading or document* filed by them in the course of any proceeding." M.D. Ga. L.R. 83.2.12 (emphasis added). Defense counsel's assertion that because Mr. Yurachek did not file a notice of change of address, he did not keep the Court informed, is meritless.[6] Doc. 97 at 30-31.

The judgment Holden "finally obtained" was "not more favorable than the unaccepted offer." Fed. R. Civ. P. 68(d). The defendants' unaccepted offer offered "to allow judgment to be taken by Plaintiff Holden for a permanent injunction as described in" the Eleventh Circuit's opinion, "together with costs accrued by Plaintiff Holden

---

[6] Seemingly unprepared to address the Rule 68 offer at the evidentiary hearing, defense counsel subsequently filed a letter regarding Local Rule 83.2.12 to argue that the Rule requires service at the address on the plaintiffs' most recent *pleading* filed with the Court. Doc. 102. Arguing that the plaintiffs' most recent filing was not a "pleading" as defined by Federal Rule of Civil Procedure 7, defense counsel argued he was not bound to serve the plaintiffs' counsel at his current address. *Id.* That argument is frivolous. Proper service under the Local Rules requires the paper or notice to be "addressed to the attorney at the address shown on the role of attorneys admitted to practice before this Court; or to counsel or the respondent's attorney at the address indicated in the most recent pleading *or document* filed by them in the course of any proceeding." M.D. Ga. L.R. 83.2.12 (emphasis added).

through the date this offer is served."  Doc. 97-6 at 1.  The proposed injunction stated: "permanently enjoin the Sheriff from requiring Holden to display a sign on his front yard relating to his registered sex offender status."  *Id*.  The judgment Holden finally obtained was a permanent injunction, which stated: "Sheriff Gary Long, in his official capacity, is permanently enjoined from requiring Holden to display a sign in his front yard relating to his registered sex offender status."  Doc. 84.  Therefore, the judgment was the same as, and not more favorable than, the defendants' unaccepted Rule 68 offer.

The plaintiffs argue that the Rule 68 offer "is ambiguous with regard to attorney fees" and that "the result obtained by Petitioners is more favorable than the terms of the Rule 68 Letter since the Rule 68 Letter only accepts responsibility for costs associated with Mr. Holden while … Mr. Reed and Mr. McClendon are also entitled to fees due to the preliminary injunction victory and the Sheriff's subsequent policy change."  Doc. 99 at 9.  However, "a plaintiff who accepts a Rule 68 offer may recover attorneys' fees as costs then accrued if the relevant statute or other authority defines costs to include attorneys' fees."  *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1244 (11th Cir. 2002) (cleaned up).  Under § 1988, costs include attorneys' fees.  42 U.S.C. § 1988(b) ("a reasonable attorney's fee as part of the costs"); *see also Marek v. Chesny*, 473 U.S. 1, 7-11 (1985).  As for plaintiffs' argument regarding Reed and McClendon, the Court has not found them prevailing parties and therefore that argument is moot.

Accordingly, the Court deducts 42.9 hours for time claimed after August 5, 2022.

*6. Time Spent on Rule 11 Motion.*

The plaintiffs request recovery for time spent on a Rule 11 motion.  Because that motion was never filed, and the plaintiffs do not cite any conduct that might have warranted sanctions, the Court does not find these hours reasonable.  *See* Doc. 99 at 9. Thus, 13.6 hours are deducted for the time related to the Rule 11 motion.  Docs. 101-2 at 49; 101-3 at 9.

*7. Time Spent on Unsuccessful Claims.*

The defendants assert that "[m]ost of the Defendants and claims originally litigated in this case were unsuccessful, and time or expenses incurred on such claims is not compensable."  Doc. 97 at 25.  "If … a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Hensley*, 461 U.S. at 436 (1983).  "When the hours and rate are reasonable, a downward adjustment to a lodestar is merited only if the prevailing party was partially successful in its efforts." *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

It is true that Holden was only successful in his compelled speech claim—not in his trespass or taking claims.  *See* Doc. 50-1 at 28-33.  The compelled speech claim was the primary claim in Holden's motion for summary judgment, with the unsuccessful claims, although interrelated, merely secondary.  *See* Doc. 99 at 7 ("[T]he compelled speech issue was clearly the core of the matter—this analysis covers the first 28 of 33 pages of Petitioners' brief in support of summary judgment.").  Accordingly, because

-15-

Holden's success was limited, at least technically, the Court reduces, as plaintiffs' counsel suggest, the total requested attorney hours by 10%.  *See id.*

  *8. Mr. Yurachek's Legal Assistant's Time.*

  After voluntary reductions, the plaintiffs request 27.3 hours[7] at a $75 rate for Ms. Mimi Duong, Mr. Yurachek's legal assistant.  Docs. 91-1 ¶ 15; 91-2; 101-1 at 4.  At the evidentiary hearing, Mr. Yurachek stated that Ms. Duong can do the same work as someone with a paralegal certification, and that she does the same, if not more, work as his associate attorneys.  *See* Doc. 103.

  Time for work done by a legal assistant is "recoverable as part of a prevailing party's award for attorney's fees and expenses, but only to the extent that the [legal assistant] performs work traditionally done by an attorney."  *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (cleaned up).  This work includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence."  *Jenkins by Agyei*, 491 U.S. at 288 n.10.  According to Ms. Duong's timesheets, her hours consist primarily of internal and external correspondence regarding the case.  Docs. 91-2.  "Ms. Duong calls and/or emails witnesses and clients for Mr. Yurachek—the very type of factual investigation and drafting correspondence considered by the court in *Jenkins*."  Doc. 99 at 10.  This factual investigation and correspondence, if not done by Ms. Duong, would have been done by Mr. Yurachek himself.  *See* Doc. 91-2.  Moreover, 27.3 hours for a three-year

---

[7] Counsel voluntarily reduced the time originally claimed for Ms. Duong's work by 50%.  Doc. 101-1 at 4.

case at a $75 rate is reasonable.  Thus, the Court finds that Holden can recover $2,047.50 for Ms. Duong's time—27.3 hours at a rate of $75.

## D. Total Recovered[8]

After careful consideration, the Court concludes that the lodestar is $298,530 based upon the total reasonable hours of 620.265 (451.8 for Mr. Yurachek, 141.165 for Mr. Begnaud, and 27.3 for Ms. Duong) and the reasonable hourly rate of $500 for attorney time and $75 for paralegal time.  That ends the matter.  But to be sure,[9] the Court considers the *Johnson* factors as a whole to confirm that the lodestar is reasonable.  *Johnson*, 488 F.2d at 717-19.

The Court has considered the time and labor required, the novelty and difficulty of the case, the skill required to perform the legal service properly, the opportunity cost of the attorney's inability to work on other cases as a result of accepting this one, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount of money at issue and the results obtained, the experience, reputation, and ability of the attorneys, the undesirability of the case, the nature and length of the professional relationship with the client, and attorneys' fee

---

[8] The Court recognizes an organization paid counsel $23,750 to undertake this case.  Docs. 91 at 14; 92 at 1.  However, "an award of attorney's fees should not be reduced simply because counsel is receiving some compensation from third parties."  *Johnson v. Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1210 (11th Cir. 1983) (holding the district court erred in considering payments from a Civil Rights organization to the plaintiffs' counsel).  In light of the significant reductions made by the plaintiffs' counsel and by the Court, the Court does not feel it appropriate to further reduce counsel's fee because an organization provided upfront payment.

[9] *See Home Depot*, 931 F.3d at 1083 ("The Supreme Court has made it plain that most, if not all, of the factors used to determine a reasonable fee are already subsumed in the lodestar, and it is not permissible to enhance a fee based on a factor that is subsumed.  That would be double counting.") (quotation marks and citations omitted); *but see Caplan*, 36 F.4th at 1089-90 ("Although there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve, we have instructed that, in determining whether the lodestar amount is reasonable, the district court is to consider the 12 factors enumerated in *Johnson*.") (cleaned up).

awards in similar cases.  *Id*.  The Court also recognizes and takes into consideration that "[a] reasonable fee is one sufficient to attract competent counsel to represent the case, but not one that provides a windfall for attorneys."  *Home Depot*, 931 F.3d at 1082.  These considerations confirm that the lodestar is reasonable.

Accordingly, the Court finds that Holden is entitled to an attorneys' fee award of $298,530.

## IV. CONCLUSION

The defendants are **ORDERED** to pay Holden $298,530 for reasonable attorneys' fees.

**SO ORDERED**, this 13th day of January, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
